**UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,                           :
                                                    :
        v.                                          :
                                                    :   Case No. S4 14-CR-272 (JSR)
ANTHONY ALLEN,                                      :
PAUL THOMPSON,                                      :
TETSUYA MOTOMURA, and                               :
ANTHONY CONTI,                                      :
                                                    :
                Defendants.                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE
<u>SUPERSEDING INDICTMENT ON KASTIGAR GROUNDS</u>**

**WILLKIE FARR & GALLAGHER LLP**
Michael S. Schachter
Casey E. Donnelly
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

*Attorneys for Defendant Anthony Allen*

**TOR EKELAND, P.C.**
Tor Ekeland
Aaron Williamson
195 Plymouth Street, 5th Floor
Brooklyn, New York 11201-1133
(718) 737-7264

*Attorneys for Defendant Anthony Conti*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS .....................................................................................3

    A.    The British Government Compelled Testimony From Mr. Allen and Mr. Conti. ..............................................................................................3

    B.    Paul Robson Reviewed Mr. Allen's and Mr. Conti's Compelled Testimony. ...............................................................................................4

    C.    The DOJ Indicted Mr. Robson For Wire Fraud and Offered Mr. Robson a Cooperation Agreement For His Testimony Against Mr. Allen and Mr. Conti. ..............................................................................................5

LEGAL STANDARD ...........................................................................................6

ARGUMENT .......................................................................................................10

I.    THE GOVERNMENT CANNOT DEMONSTRATE THAT MR. ROBSON HAS NOT BEEN TAINTED BY HIS EXPOSURE TO COMPELLED TESTIMONY. ....................................................................................................10

    A.    The Defendants' Statements to the FCA Constitute Compelled Testimony. .................................................................................................10

    B.    Mr. Robson Is Tainted By His Exposure to Defendants' Compelled Testimony and the Government Cannot Prove Otherwise. .......................11

II.    THE GOVERNMENT CANNOT DEMONSTRATE THAT ITS DECISION TO PROSECUTE DEFENDANTS WAS WHOLLY INDEPENDENT OF EVIDENCE PROVIDED BY MR. ROBSON. ..................................................14

CONCLUSION ....................................................................................................17

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Bram v. United States,*
    168 U.S. 532 (1897)................................................................11

*Garner v. United States,*
    424 U.S. 648 (1976)................................................................10

*Kastigar v. United States,*
    406 U.S. 441 (1972)..............................................................7, 14

*United States v. Hubbell,*
    530 U.S. 27 (2000).................................................................9

*United States v. Kristel,*
    762 F. Supp. 1100 (S.D.N.Y. 1991)................................7,8, 11,14, 15

*United States v. Kurzer,*
    534 F.2d 511 (2d Cir. 1976).....................................................7, 13

*United States v. Mariani,*
    851 F.2d 595 (2d. Cir. 1988)....................................................14

*United States v. Nemes,*
    555 F.2d 51 (2d Cir. 1977)......................................................9, 12

*United States v. North,*
    910 F.2d 843 (D.C. Cir. 1990) ..................................................8, 9

*United States. v. North,*
    920 F.2d 940 (D.C. Cir. 1990) ................................................9, 12, 13

*United States v. Orlandez-Gamboa,*
    320 F.3d 328 (2d Cir. 2003).....................................................11

*United States v. Pelletier,*
    898 F.2d 297 (2d Cir. 1990).....................................................8

*United States v. Poindexter,*
    951 F.2d 369 (D.C. Cir. 1991) .......................................... *passim*

*United States v. Rivieccio,*
    919 F.2d 812 (2d Cir. 1990).....................................................10, 14

*United States v. Tantalo,*
    680 F.2d 903 (2d Cir. 1982).....................................................8, 10, 13

*United States v. Weissman*,
    No. S2 94 Cr. 760 (CSH), 1996 WL 751386 (S.D.N.Y. Dec. 26, 1996)..........................15

*United States v. Yousef*,
    327 F.3d 56 (2d Cir. 2003)..............................................................................................11

**Other Authorities**

U.S. Const. amend. V...............................................................................................................6

Financial Services and Markets Act of 2012, at Part 1A, §§ 1A-D.........................................3

Financial Services and Markets Act of 2000, at Part XI, §§ 171,172, 177................................3

Financial Services and Markets Act of 2000, at Part XIV, §§ 205, 207....................................4

Financial Services and Markets Act of 2000, at Part XXVI, § 387............................................4

Financial Services and Markets Act of 2000, at Part XXVI, § 394(1) ......................................4

Defendants Anthony Allen and Anthony Conti respectfully submit this memorandum of law in support of their motion to dismiss the Superseding Indictment, and in the alternative, to suppress the testimony of Paul Robson and all evidence derived from Mr. Robson's testimony.

## PRELIMINARY STATEMENT

The Government's case against Mr. Allen and Mr. Conti is irrevocably tainted and must be dismissed.  The Supreme Court has held that where an individual is unable to assert his Fifth Amendment privilege against self-incrimination and is compelled to be a witness against himself, *any* use, in *any* manner, of those compelled statements is prohibited.  In this case, the Defendants' compelled testimony was reviewed by the Government's primary cooperating witness, a witness without whose cooperation Messrs. Allen and Conti would never have been charged.

In 2012, the Financial Conduct Authority (the "FCA"), the agency in the United Kingdom responsible for enforcing financial rules and regulations, began investigating potential manipulation of the London Inter-Bank Offered Rate ("LIBOR") at Coöperatieve Centrale Raiffeisen-Borenleenbank B.A. ("Rabobank"), a Dutch banking and financial services company. In 2013, Mr. Allen and Mr. Conti were questioned by FCA investigators and prevented from exercising their right against self-incrimination.  The FCA provided transcripts of the Defendants' compelled testimony to another former Rabobank employee, Paul Robson, who spent the last two months of 2013 reviewing them.

In April 2014, Mr. Robson was indicted for making fraudulent LIBOR submissions; Messrs. Allen and Conti were not charged.  After having reviewed Mr. Allen's and Mr. Conti's compelled testimony, Mr. Robson approached the Government to seek a cooperation agreement.  Over several days in July 2014, the Government extensively interviewed Mr.

Robson about Mr. Allen and Mr. Conti.  Within a month of Mr. Robson's plea, the Government filed a Superseding Indictment against Mr. Allen and Mr. Conti.  The Government's decision to bring charges, and the Indictment itself, are both directly derived from testimony that is indisputably tainted.  Prior to Mr. Robson's cooperation, the Government was not going to prosecute Mr. Allen or Mr. Conti.  It was only after interviewing and securing the cooperation of Mr. Robson, who had previously studied testimony that Mr. Allen and Mr. Conti were forced to give—in violation of their Fifth Amendment rights—that the Government chose to indict them.

When a prosecution witness has been exposed to a defendant's compelled testimony, the prosecution bears the heavy burden of affirmatively proving that its case against the defendant is derived from a wholly independent and legitimate source and that the witness's testimony was not in any way shaped, altered or affected by his exposure.  This may theoretically be established if the prosecution memorialized the witness's testimony in advance of his exposure to the defendant's compelled statements—so-called "canned statements"—and the prosecution can prove that the compelled statements in no way refreshed or influenced, in even the most indirect manner, the witness's testimony.  But where, as here, the Government has no canned testimony, the Government cannot meet its heavy burden of showing that Mr. Robson's testimony was not affected by his review of the Defendants' compelled statements.  And because the Government cannot prove that Mr. Robson's testimony was unaffected, it cannot confirm that the Defendants' compelled testimony was not used against them when the Government decided to bring charges.  In such an instance, the Government's case against the Defendants must be dismissed.

Accordingly, Mr. Allen and Mr. Conti respectfully move this Honorable Court for the dismissal of the Superseding Indictment, or, in the alternative, for a ruling barring the introduction at trial of Mr. Robson's testimony and any evidence derived from that testimony.

## STATEMENT OF FACTS

### A.  The  British Government Compelled Testimony From Mr. Allen and Mr. Conti.

The FCA is the government agency in the United Kingdom responsible for regulating financial institutions and maintaining the integrity of the UK's financial markets.  *See* Financial Services and Markets Act of 2012, at Part 1A, §§ 1A-D.  Investigators for the FCA have broad fact-finding powers, including the power to compel a witness to appear for an interview and to compel that witness to answer all questions posed to him.  Financial Services and Markets Act of 2000 ("FSMA" or "FSMA of 2010"), at Part XI, §§ 171, 172.  Witnesses who have been compelled to appear before the FCA may not exercise a privilege against self-incrimination.  *Id.*  A witness who fails to answer questions posed by the FCA may be subject to criminal penalties, including imprisonment.  *Id.*, at Part XI, § 177.

On June 21 and 22, 2013, the FCA exercised its power under Sections 171 and 172 of FSMA to compel Mr. Allen to testify before the FCA as part of its investigation into potential LIBOR manipulation at Rabobank.  Mr. Allen served as the Head of Liquidity and Finance at Rabobank from 2005 through 2009.  (*See* Superseding Ind. ¶¶ 1-3, 9, June 25, 2015, ECF No. 62 (the "Superseding Indictment").)  Because Mr. Allen was required to answer any and all questions put to him by the FCA, regardless of whether the answer might be self-incriminating, Mr. Allen's counsel objected to the interview as follows:

> I understand that Mr. Allen's testimony here today is compelled and that he has no ability to [i]nvoke a privilege against self-incrimination.  As a result of those facts, his testimony is protected

3

> by both use and derivative use immunity.  Should . . . either his
> testimony or any information derived in any way from the
> information he provides here today be disclosed in any way to U.S.
> authorities, the result of that would be preclusion of his
> prosecution in the United States.

The FCA's interview of Mr. Allen lasted two days and the transcript of his testimony runs to over 200 pages.

On January 26, 2013, three months before Mr. Allen's interview, FCA investigators also compelled testimony from Mr. Conti pursuant to their powers under Sections 171 and 172 of FSMA.  Mr. Conti worked as a cash trader and served as the primary U.S. Dollar LIBOR submitter at Rabobank until 2009.  (Superseding Ind. at ¶ 26.)  Like Mr. Allen, Mr. Conti was compelled to answer every question posed by the FCA and was forbidden from exercising his privilege against self-incrimination.

**B.  <u>Paul Robson Reviewed Mr. Allen's and Mr. Conti's Compelled Testimony.</u>**

In 2013, after almost two years of investigation into Rabobank's conduct, the FCA concluded that Paul Robson, a UK citizen who had acted as Rabobank's primary LIBOR submitter for Japanese Yen LIBOR until late 2008, had engaged in wrongdoing.  Once the FCA concludes that an individual has acted improperly, it is required to issue him or her a Warning Notice, informing him that the FCA intends to take further action against him.  FSMA of 2000, at Part XIV, §§ 205, 207; *id.* at Part XXVI, § 387.  Once served with a Warning Notice, the individual has the right to access the material that led the FCA to conclude that further action was necessary.  *Id.*, at Part XXVI, § 394(1).

After inquiry by defense counsel, the Justice Department admitted that Mr. Robson's Warning Notice was accompanied by transcripts of the FCA's compelled interviews with Anthony Allen and Anthony Conti, and that Mr. Robson had reviewed the compelled

testimony of the Defendants over a two-month period in November and December 2013.  (Ex. 1 (May 26, 2015 Ltr. from Department of Justice).)

**C.**  **The DOJ Indicted Mr. Robson For Wire Fraud and Offered Mr. Robson a Cooperation Agreement For His Testimony Against Mr. Allen and Mr. Conti.**

On April 28, 2014, the Government filed an Indictment against Mr. Robson and two other former Rabobank traders, Paul Thompson and Tetsuya Motomura.  (*See* Ind., Apr. 28, 2014, ECF No. 5 (the "Original Indictment").)  The Government alleged that Mr. Robson, Mr. Thompson, and Mr. Motomura had conspired to make "false and fraudulent Yen LIBOR submissions" in an effort to increase the "profitability" of "trading positions" held by Rabobank's derivatives traders that were tied to JPY LIBOR.  (*Id.* at ¶¶ 17-21.)

The filing of the Original Indictment in April 2014 was the culmination of a four year Government investigation into potential wrongdoing at Rabobank.  (Ex. 2 (noting Government's information request of July 1, 2010).)  By April of 2014, the Government had conducted witness proffers with at least eighteen of Rabobank's former and current employees, and had reviewed over 200,000 documents produced by Rabobank.  Despite the breadth of its investigation, the Government did not have sufficient evidence in April 2014 to charge either Mr. Allen or Mr. Conti with any wrongdoing, and as a result, neither was named as a defendant in the Original Indictment.

In conversations with Mr. Conti's former counsel in August of 2014, the Government was quite forthcoming about the lack of evidence related to the Defendants.  Indeed, the Government said that it "would like Conti to become a cooperator" who would testify against Mr. Allen, because, in the Government's words, Mr. Allen was "'not on a lot of documents'" and

any case against him would have to "'heavily rel[y] on testimony.'"  (Ex. 3 (internal Baker & McKenzie LLP email summarizing conversation with C. Sipperly).)

The Government got a big break when Mr. Robson initiated plea negotiations in the summer of 2014.  On July 17 and 18, 2014, the Government conducted their first interview of Mr. Robson.  (Ex. 4 (July 17, 2014 Proffer Agr.).)  By this date, however, Mr. Robson had already spent months with the compelled statements of Mr. Allen and Mr. Conti.  (Ex. 1.)

On August 5, 2014, approximately two weeks after its interview of Mr. Robson, the Government agreed to dismiss all but one of the outstanding charges against him.  (Ex. 5 (Robson Plea Agr., Aug. 5, 2014).)  In return, Mr. Robson agreed to "cooperate fully" with the Government's investigation, including to "testify before the grand jury and at any trial."  (*Id.*) Mr. Robson also agreed to plead guilty to a single count of conspiracy.  (*Id.*)  Mr. Robson's guilty plea was accepted by the Court on August 18, 2014.  (Ex. 6 (Tr. of Plea 15:12-22, Aug. 18, 2014, ECF No. 21 ("Tr. of Robson Plea").)  During that appearance, the Government informed the Court that "in light of information that ha[d] come to light" as a result of Mr. Robson's cooperation, the Government was considering filing a "superseding indictment  . . . involv[ing] other individuals." (*Id.* at 25:15-23.)

Eight weeks later, on October 16, 2014, the Government filed charges against Anthony Allen and Anthony Conti.  (*See generally* Superseding Ind., Oct. 16, 2014, ECF No. 24 ("First Superseding Indictment").)

## LEGAL STANDARD

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The Fifth Amendment privilege against self-incrimination "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory" and it protects a witness against

statements which "the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972). The Supreme Court has held that when an individual is unable to assert his Fifth Amendment privilege against self-incrimination and is compelled to be a witness against himself, the Fifth Amendment prohibits the "us[e] [of the] compelled testimony in any respect." *Id.* at 453. This is a blanket prohibition: the Fifth Amendment does not only preclude "a whole lot of use," or "excessive use," or "primary use" of compelled testimony but rather prohibits "any use, direct or indirect." *United States v. Poindexter*, 951 F.2d 369, 373 (D.C. Cir. 1991) (internal citations omitted).[1]

Once a defendant demonstrates that he has previously been compelled to testify about a matter relevant to the charges against him, the prosecution bears the "affirmative duty to prove that the evidence it proposes to use [against the defendant] is derived from a legitimate source wholly independent of the compelled testimony." *Id.* at 373 (*citing Kastigar*, 406 U.S. at 460). For example, the prosecution is required to prove that its "decision to prosecute" the defendant was not "affected" in any way, directly or indirectly, by the compelled testimony or any information derived from that testimony. *United States v. Kristel*, 762 F.Supp. 1100, 1109 (S.D.N.Y. 1991) (indictment dismissed where court found that the defendant's compelled testimony "played an important part in the Government's decision to investigate and prosecute" the defendant); *United States v. Kurzer*, 534 F.2d 511, 516 (2d Cir. 1976) (the Fifth Amendment prohibits "the use not only of evidence, but of information, directly or indirectly derived from the

---

[1]   Because *Kastigar* holds that the Fifth Amendment privilege against self-incrimination is co-extensive with prosecutorial immunity under 18 U.S.C. § 6002, courts consider compelled statements, such as those offered by Mr. Allen and Mr. Conti to the FCA, and statements made pursuant to § 6002 immunity, as identical in determining whether a defendant's compelled statements have been improperly used. *See Kastigar*, 406 U.S. at 444-45.

immunized testimony.") (internal citations omitted).  The prosecution is also required to show that the grand jury was not presented with any evidence, including witness testimony from law enforcement agents, that was derived or influenced by the defendant's compelled statements. *United States v. Tantalo*, 680 F.2d 903, 908-09 (2d Cir. 1982) (indictment invalid "as a matter of law" where grand jury was tainted by exposure to the defendant's immunized testimony and dismissal was required); *Poindexter*, 951 F.2d at 377 ("If the tainted evidence was presented to the grand jury, the indictment will be dismissed.") (internal citations omitted).

It is a Fifth Amendment violation to allow a witness who has been exposed to the compelled statements of the defendant to testify against the defendant.  Courts have found that where a witness for the prosecution was previously exposed to compelled testimony, the defendant's conviction could not stand.  *Poindexter*, 951 F.2d at 376.  If a prosecution witness offers testimony against the defendant that is "in any way shaped, altered, or affected" by his or her exposure to compelled testimony, a constitutional violation has occurred.  *Id.* at 373.  The Fifth Amendment even mandates the dismissal of the prosecution where the "use" of the defendant's compelled statements was limited to "refresh[ing]" a testifying witness's recollection.  *Id.*; *United States. v. North*, 910 F.2d 843, 860 (D.C. Cir. 1990) (hereinafter "*North I*") (the Fifth Amendment is violated when compelled testimony is "reviewed" or "studied" by a witness or if it is used to "focus their thoughts" or "organize their testimony").

It is not the defendant's burden to show that his compelled statements were used by the prosecution.  Rather, the burden lies fully on the prosecution to demonstrate that it made no use of the compelled statements.  *See Kristel*, 762 F. Supp. at 1106; *United States v. Pelletier*, 898 F.2d 297, 303 (2d Cir. 1990) (convictions reversed where prosecutor made use of the defendant's compelled testimony, even though prosecution was able to demonstrate "the

8

availability of 'wholly independent' evidence from which it might have procured indictment or conviction"); *Poindexter*, 951 F.2d at 376.  This is a "heavy burden" for the prosecution to meet. *United States v. Hubbell*, 530 U.S. 27, 40 (2000).  The bare assertion by the prosecutor "that the immunized testimony was not used" will not suffice.  *United States v. Nemes*, 555 F.2d 51, 55 (2d Cir. 1977) (vacating conviction where defendant claimed her immunized testimony to the grand jury was used against her).  A claim that the government attorneys trying a particular case have not themselves reviewed the compelled testimony will also not hold up to *Kastigar* scrutiny.  *Id.* (a prosecutor's lack of access to compelled testimony by itself "cannot be relied upon to afford the witness the full protection the Constitution guarantees.").  The fact that the prosecutor has not read the compelled statements personally "does not preclude the possibility that someone who has seen the compelled testimony was thereby led to evidence that was furnished to federal investigators." *Id.*

Where a prosecutor does not have "canned" statements given by a witness prior to his or her exposure to the compelled testimony, it will be "extremely difficult for the prosecutor to sustain its burden of proof."  *United States v. North*, 920 F.2d 940, 943 (D.C. Cir. 1990) (hereinafter "*North II*") (defendant successfully appealed various convictions claiming that his compelled, immunized, and nationally televised testimony before Congress had fatally tainted the prosecution).  This is because "there is no way a trier of fact can determine whether the memories of [a] witnes[s] would be substantially different" had the witness not reviewed the compelled testimony, since, "memory is a mysterious thing that can be stirred by a shaggy dog or a broken promise." *North I*, 910 F.2d. at 860 (internal citations omitted).

The remedy for a *Kastigar* violation is the suppression of the tainted evidence at trial, and where the indictment rests almost exclusively on tainted evidence, dismissal of the

indictment itself. *United States v. Rivieccio*, 919 F.2d 812, 816 n.4 (2d Cir. 1990). Once a

defendant raises the issue of the improper use of compelled testimony in violation of *Kastigar*

and its progeny, "the defendant is entitled to a fair hearing at which the Government must make

an affirmative showing that evidence . . . was derived from legitimate independent sources."

*Tantalo*, 680 F.2d at 908. However, where, as here, there is no conceivable means by which the

prosecution could meet its burden of showing the tainted evidence is derived from legitimate,

independent sources, such a hearing is unnecessary. *See Poindexter*, 951 F.2d at 376-77 (holding

there was no "utility" in holding a *Kastigar* hearing where evidence was obviously tainted and

prosecution could not "suggest[] any other way in which he might meet his burden").[2]

## ARGUMENT

## I.   THE GOVERNMENT CANNOT DEMONSTRATE THAT MR. ROBSON HAS NOT BEEN TAINTED BY HIS EXPOSURE TO COMPELLED TESTIMONY.

### A.   The Defendants' Statements to the FCA Constitute Compelled Testimony.

When Mr. Allen and Mr. Conti were compelled to testify before the FCA, both

Defendants were informed that they were "required to answer any question" posed by the FCA

and that they risked "imprisonment" for failure to obey that instruction. Statements are

considered compelled when an individual does not have the "free choice to admit, to deny, or to

refuse to answer" a question. *See Garner v. United States*, 424 U.S. 648, 656-57 (1976).

---

[2]   Although many of the cases cited in this brief are situated in a post-conviction procedural posture, the analysis at the pre-trial stage is fundamentally the same. This is because the Fifth Amendment, from which *Kastigar* and its progeny descend, "is by its terms an exclusionary rule, and as implemented in the immunity statute it is a very broad one," which requires that the witness be left "in substantially the same position as if (he) had claimed the Fifth Amendment privilege." *Tantalo*, 680 F.2d at 903 (finding that denial of defendant's pre-trial motion to dismiss without holding a hearing on the merits of his *Kastigar* claim was reversible error).

Because Mr. Allen and Mr. Conti did not have the "free choice to admit, to deny, or to refuse to answer" the FCA's questions, their statements to the FCA constitute compelled testimony. *Id.*; *Bram v. United States*, 168 U.S. 532, 565 (1897) (holding that the Fifth Amendment privilege against self-incrimination applies extraterritorially, and that a violation of that privilege occurred when foreign authorities coerced a confession from an individual suspected of having committed a crime); *see also United States v. Orlandez-Gamboa*, 320 F.3d 328, 332 (2d Cir. 2003) (applying Fifth Amendment voluntariness analysis to statements made to foreign law enforcement agents and finding those statements admissible only if voluntary); *United States v. Yousef*, 327 F.3d 56, 144-45 (2d Cir. 2003) (where defendant is questioned by foreign police without the right to remain silent, the Fifth Amendment precludes the use of the defendant's statements, unless they were offered voluntarily).

### B. Mr. Robson Is Tainted By His Exposure to Defendants' Compelled Testimony and the Government Cannot Prove Otherwise.

It is an undisputed fact that during a two month period in late 2013, Mr. Robson reviewed the transcripts of at least nine different interviews compelled by the FCA. (Ex. 1.) Mr. Robson read more than three hundred pages of compelled statements from the Defendants alone, and has had those statements in his possession for close to two years. (*Id.*) Many of the events being investigated by the Government, and about which the FCA questioned the Defendants, took place ten years ago. Under these circumstances, it is impossible for the Government to demonstrate persuasively that Mr. Robson has been unaffected by his review of Mr. Allen's and Mr. Conti's compelled statements, and that he is capable, after all this time, of segregating the effects of his exposure in 2013 from his current recollection. Where "it proves impossible to separate the witness['s] unspoiled testimony from that tainted by exposure" one consequence may be that "the prosecution cannot proceed." *Kristel*, 762 F. Supp. at 1108-09.

11

The decision in *U.S. v. Poindexter* illustrates this point. *Poindexter* involved the prosecution of the former U.S. National Security Advisor, Admiral John Poindexter, for a conspiracy to destroy official documents and for corruptly obstructing Congress in connection with its investigation of the Iran-Contra Affair. *Poindexter*, 951 F.2d at 371-72. As part of the congressional investigation into Iran-Contra, Admiral Poindexter was compelled to testify before Congress pursuant to a grant of immunity. *Id.* at 372. The Admiral's congressional testimony "received extensive national press coverage." *Id.* at 372. Admiral Poindexter was eventually convicted on all counts against him, but sought to challenge the conviction on the basis that one of the key witnesses against him, Lieutenant Colonel Oliver North, had "spent literally days" with the Admiral's compelled testimony before Congress prior to testifying against the Admiral at trial. *Id.* at 375. The court in *Poindexter* agreed with the defendant, finding that the occurrence of an impermissible taint was the "natural course of events" resulting from the witness's repeated and extensive exposure to the Admiral's compelled statements, and that the prosecution had not carried its "heavy burden" to demonstrate that the compelled testimony "did not influence the witness." *Id.* at 376.

As in *Poindexter*, the Government in the present case simply cannot carry its "heavy burden," *id.*, by merely asserting, or by having Mr. Robson assert, that he remains unaffected by his review of the Defendants' compelled statements. *United States v. Nemes*, 555 F.2d at 55 (prosecutor's assertions of non-use will not satisfy burden). Perhaps the Government *could* satisfy its burden if Mr. Robson had provided testimony prior to his exposure to the Defendants' compelled statements and the Government could demonstrate that such testimony was identical to the testimony given by Mr. Robson post-exposure. *North II*, 920 F.2d at 943. In *North*, the 'sister' case to *Poindexter*, the defendant, Lt. Col. North, likewise sought to overturn

12

his conviction on the grounds that key witnesses against him had been impermissibly tainted by exposure to the defendant's compelled statements to Congress. *North II*, 920 F.2d at 853. The court agreed, holding that *Kastigar* is violated "whenever the prosecution puts on a witness whose testimony is shaped, directly or indirectly, by compelled testimony, regardless of how or by whom he was exposed to that compelled testimony" and stating that the prosecution could rebut the existence of taint by comparing a witness's purportedly tainted testimony with his or her pre-taint, "canned" statements. *Id.* at 942-944 (where a prosecutor does not have "canned" statements from a prosecution witness, it will be "extremely difficult for the prosecutor to sustain its burden of proof.")

In the present case, the Government has no such pre-taint testimony from Mr. Robson. All it has are Mr. Robson's several interviews with the Federal Bureau of Investigation and the Department of Justice, all of which occurred *after* his extensive exposure to the Defendants' compelled statements.[3] Thus, there is no way for the Government to demonstrate what Mr. Robson's testimony *would have been* had he not reviewed and been influenced by Mr. Allen's and Mr. Conti's compelled statements. It is therefore impossible for the Government to prove that Mr. Robson's current testimony has not been "shaped, altered, or otherwise affected"

---

[3] At this point, the Defendants do not know whether Mr. Robson testified before the grand jury in person, or if a summary of his testimony was relayed to the grand jury by a third party such as an FBI agent. Either case, however, would constitute a violation of *Kastigar* since in both instances the grand jury would have been impermissibly exposed to testimony influenced by Defendants' compelled statements. *See Tantalo*, 680 F.2d at 908 (where grand jury was tainted by exposure to immunized testimony, dismissal of the indictment against the defendant was required); *Kurzer*, 534 F.2d at 517 (holding prosecution had burden to prove that evidence used to secure the indictment was not derived from compelled or immunized testimony and remanding for further finding of fact on this point); *Poindexter*, 951 F.2d at 377 ("If the tainted evidence was presented to the grand jury, the indictment will be dismissed.") (internal citations omitted).

by his review of those statements.  *Poindexter*, 951 F.2d at 373.  Mr. Robson's statements are

tainted and the Government cannot prove otherwise.[4]

## II.  THE GOVERNMENT CANNOT DEMONSTRATE THAT ITS DECISION TO PROSECUTE DEFENDANTS WAS WHOLLY INDEPENDENT OF EVIDENCE PROVIDED BY MR. ROBSON.

In order to avoid dismissal of its case against Mr. Allen and Mr. Conti, the

Government bears the "affirmative duty to prove that the evidence it proposes to use [against the

defendant] is derived from a legitimate source wholly independent of the compelled testimony."

*Id.* at 373 (*citing Kastigar*, 406 U.S. at 460).  The Second Circuit has held that the scope of

impermissible "use" of compelled testimony is broad, and falls significantly short "of

introducing tainted evidence" at trial itself.  *See United States v. Mariani*, 851 F.2d 595, 600 (2d.

Cir. 1988).[5]  Prohibited uses include, but are not limited to:  "assistance in focusing the

investigation, deciding to initiate prosecution, refusing to plea bargain, interpreting evidence,

planning cross-examination, and otherwise generally planning trial strategy."  *Id*; *see also*

*Kristel*, 762 F. Supp. at 1108-09 (dismissal of indictment when the prosecution's "investigation

and decision to prosecute" had been "affected, at least in part, by what it had learned" as a result

of improper exposure to the defendant's compelled testimony).

---

[4]    Although Defendants are moving here to have the Superseding Indictment dismissed, should the Court disagree that such action is warranted, the Defendants alternatively move to suppress any testimony by Mr. Robson from being presented at trial as well as any evidence derived from that testimony.  *See Rivieccio,* 919 F.2d at 816 n. 6 (remedy for a violation of *Kastigar* is "suppression at trial of . . . compelled testimony" except where the indictment "rests almost exclusively on tainted evidence.").

[5]    In *Mariani*, the defendant sought to overturn his RICO conviction on the grounds that his own immunized statements in a grand jury proceeding formed the basis for the prosecution's case.  *Mariani*, 851 F.2d at 599.  However, because the critical evidence leading to the defendant's indictment was in the prosecution's possession *before* the defendant testified before the grand jury, the court in *Mariani* found that the prosecution had not actually made use of the defendant's immunized grand jury testimony, and that the prosecution had sources for its evidence against the defendant independent of his compelled testimony.  *Id.* at 599-601.  The case at bar is easily distinguished from *Mariani*.  Here, it was not until *after* it had been exposed to Mr. Robson's impermissibly tainted testimony that the Government possessed evidence sufficient to indict Mr. Allen and Mr. Conti.

*U.S. v. Kristel* is also instructive here.  In *Kristel*, government agents, in the course of investigating a scheme to defraud Merrill Lynch by causing it to issue false checks, discovered the defendant's immunized testimony as a cooperator in an unrelated bribery case. *Kristel*, 762 F. Supp. at 1103.  Discovery of the defendant's testimony ultimately led to the defendant's indictment as part of the scheme to defraud Merrill Lynch, and his testimony was used to refresh the recollection of multiple witnesses against him.  *Id.* at 1108.  The court in *Kristel* held that the prosecution's use of the defendant's immunized testimony had irrevocably tainted the proceedings, not least of all, in that its decision to indict the defendant in the first place was based almost entirely on the defendant's own immunized statements.  *Id.* at 1109; *see also United States v. Weissman*, No. S2 94 Cr. 760 (CSH), 1996 WL 751386, at *9 (S.D.N.Y. Dec. 26, 1996) (citing *Kristel* approvingly for the proposition that immunized testimony cannot "properly be used as an investigatory lead or as a means of focusing the investigation.").

Here, the Superseding Indictment must be dismissed because, as in *Kristel*, the Government's decision to file charges against Mr. Allen and Mr. Conti was based directly on tainted evidence it received from Mr. Robson in July of 2014.[6]  This fact is not disputed:  the Government admitted as much during its August 18, 2014 appearance in this Court, when it explained that it was considering filing a "superseding indictment . . . involv[ing] other individuals" in "light of information that ha[d] come to light" as a result of Mr. Robson's cooperation.  (Ex. 6 (Tr. of Robson Plea) at 25:15-23.)

---

[6]     At this juncture, the Defendants do not know if Mr. Robson is the only source of taint that the Government has been exposed to during its investigation.  The Government may also have been exposed to tainted information during communications with the FCA and the UK's Serious Fraud Office, since those agencies were present for each compelled interview.  Similarly, Defendants do not know whether the Government's witnesses may have been motivated to cooperate because of evidence derived from the Defendants' compelled statements.  Should this Court determine that a *Kastigar* hearing is necessary, Defendants are entitled to investigate the extent to which the Defendants' compelled testimony has been used.

If the Government had a "legitimate source wholly independent" of Mr. Robson that would have allowed it to bring a case against Mr. Allen and Mr. Conti, it would have certainly filed charges against the Defendants well before Mr. Robson decided to cooperate in the summer of 2014. After all, the Government's investigation into potential LIBOR manipulation at Rabobank began in 2010. (Ex. 2.) If that investigation had yielded evidence of criminal wrongdoing on the part of the Defendants, the Defendants would have been included in the Original Indictment filed in April of 2014. But, as Ms. Sipperly explained to Mr. Conti's former counsel, despite four years of investigation, the Government simply didn't have "a lot of documents" implicating Mr. Allen and couldn't "build [a] case" against him without "heavily relying on testimony." (Ex. 3.)

Although Mr. Robson may have provided the Government with the witness testimony it desired, that testimony is irreversibly tainted by Mr. Robson's exposure to the Defendants' compelled statements to the FCA, as described above. Thus, use by the Government of Mr. Robson's tainted testimony is a violation of the Defendants' Fifth Amendment rights. Because the inclusion of Mr. Allen and Mr. Conti in the First Superseding Indictment was based on Mr. Robson's tainted testimony, the Government's decision to file the First Superseding Indictment constitutes a prohibited Government "use" of compelled testimony under *Kastigar* and its progeny that necessitates the dismissal of the Superseding Indictment.

## CONCLUSION

Accordingly, this Court should order the dismissal of the Superseding Indictment against Anthony Allen and Anthony Conti, or, in the alternative, order the suppression of Mr. Robson's testimony and all evidence derived from Mr. Robson's testimony and preclude its use at trial.

Dated:   New York, New York
         July 17, 2015

WILLKIE FARR & GALLAGHER LLP

By:   /s/ Michael S. Schachter
      Michael S. Schachter
      Casey E. Donnelly
      787 Seventh Avenue
      New York, New York 10019-6099
      Phone:  (212) 728-8000

      *Attorneys for Defendant Anthony Allen*

TOR EKELAND, P.C.

By:   /s/ Tor Ekeland
      (electronic signature w/permission)
      Tor Ekeland
      Aaron Williamson
      195 Plymouth Street, 5th Floor
      Brooklyn, New York 11201-1133
      Phone: (718) 737-7264

      *Attorneys for Defendant Anthony Conti*