UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------- x
UNITED STATES OF AMERICA,                   :
                                            :
    v.                                      :
                                            :  Case No. S4 14-CR-272 (JSR)
ANTHONY ALLEN,                              :
PAUL THOMPSON,                              :
TETSUYA MOTOMURA, and                       :
ANTHONY CONTI,                              :
                                            :
        Defendants.                         :
------------------------------------------- x

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR RECONSIDERATION OF THE
AUGUST 17, 2015 ORDER REGARDING
DEFENDANTS' MOTION FOR A RULE 15 DEPOSITION OF JOHN EWAN

| | |
|---|---|
| **WILLKIE FARR & GALLAGHER LLP** | **TOR EKELAND, P.C.** |
| Michael S. Schachter | Tor Ekeland |
| Casey E. Donnelly | Aaron Williamson |
| 787 Seventh Avenue | 195 Plymouth Street, 5th Floor |
| New York, New York 10019 | Brooklyn, New York 11201-1133 |
| (212) 728-8000 | (718) 737-7264 |
| | |
| *Attorneys for Defendant Anthony Allen* | *Attorneys for Defendant Anthony Conti* |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................................1

ARGUMENT ...................................................................................................................................2

      I.     MR. EWAN WOULD TESTIFY THAT HE TOLD THE FX & MM COMMITTEE THAT BANKS WERE BUMPING THEIR LIBOR SUBMISSIONS UP OR DOWN FOR SELF-INTERESTED REASONS. ...............2

      II.    MR. EWAN WOULD TESTIFY THAT MARKET PARTICIPANTS WERE INFORMED THAT LIBOR WAS RIGGED. ................................................5

      III.   MR. EWAN'S TESTIMONY IS NOT HEARSAY OR OPINION EVIDENCE. .......................................................................................................................6

CONCLUSION ................................................................................................................................8

# TABLE OF AUTHORITIES

**Cases**                                                                                                              **Page(s)**

*Eisemann v. Greene*,
    204 F.3d 393 (2d Cir. 2000) ............................................................................................................1

*United States v. Little*,
    No. 12–cr–00647 (ALC), 2014 WL 3604417 (S.D.N.Y. July 16, 2014) ...........................7

*United States v. Mann*,
    590 F.2d 361 (1st Cir. 1978) ............................................................................................7

*United States v. Vilar*,
    568 F. Supp. 2d 429 (S.D.N.Y. 2008) ..............................................................................7

**Rules**

Fed. R. Evid. 701 ............................................................................................................................7

Fed. R. Evid. 801(c)(2) ...................................................................................................................6

Local Criminal Rule 49.1(d) ..........................................................................................................1

Defendants Anthony Allen and Anthony Conti respectfully submit this memorandum of law in support of their motion seeking reconsideration of the Court's August 17, 2015 Order (Dkt. 100 (the "Order")), which denied Defendants' motion for a Rule 15 deposition of John Ewan. (*See* Dkt. 83 (Defendants' Opening Brief ("Defs. Br."), filed July 24, 2015; Dkt. 97 (Defendants' Reply Brief ("Reply"), filed August 12, 2015.)

## PRELIMINARY STATEMENT

Local Criminal Rule 49.1(d) provides that a party may move the Court to reconsider its ruling on an underlying motion and that "[a] memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked shall accompany the motion." In order to prevail on a motion for reconsideration, the moving party "must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." *Eisemann v. Greene*, 204 F.3d 393, 395 n.2 (2d Cir. 2000).

The Court denied Defendants' request for a Rule 15 deposition of John Ewan on the basis that Defendants failed to show that Mr. Ewan's testimony would be material. (Ord. at 4.) Defendants file this motion for reconsideration to address two factual inaccuracies that they believe merit reversal of the Court's decision. Contrary to the facts set forth in the Order, Mr. Ewan would, in fact, testify that Panel Banks were selecting LIBOR rates for submission based, at least in part, on their financial self-interest, and he would testify that he reported this practice to the FX & MM Committee. Mr. Ewan would also testify that he informed certain participants in the derivatives market—participants, including Citibank, Bank of America, and JP Morgan, that the Government will seek to prove were defrauded by Defendants' conduct—that LIBOR was rigged. This testimony is relevant to refuting the Government's claim that Defendants'

1

LIBOR submissions constitute materially false and fraudulent statements, and is thus material for Rule 15 purposes. For this reason, a Rule 15 deposition of Mr. Ewan is warranted.

## ARGUMENT

### I. MR. EWAN WOULD TESTIFY THAT HE TOLD THE FX & MM COMMITTEE THAT BANKS WERE BUMPING THEIR LIBOR SUBMISSIONS UP OR DOWN FOR SELF-INTERESTED REASONS.

The Order states that Mr. Ewan's testimony is not material to the question of whether Defendants' statements were "false" because, "as described by [D]efendants," Mr. Ewan is not expected to "testify that he expected [LIBOR] submitting employees to 'bump' their estimates up or down based on their personal financial interests…let alone that he reported such practices to the [FX & MM] Committee[.]" (Ord. at 5.) The Court concluded that without testimony on that topic, "Mr. Ewan's testimony would do nothing to rebut the Government's showing…that [D]efendants' LIBOR submissions were the product of artificial manipulation." (*Id.*)

The description set forth in the Order concerning Mr. Ewan's expected testimony is inaccurate. Mr. Ewan *would* testify that LIBOR submitters were "'bump[ing]' their estimates up or down based on their personal financial interests" (*id.*), and would explain to the jury that he reported this practice to the FX & MM Committee. (*See* Defs. Br. at 7; Reply at 4, 6 ("Of concern is. . . that [Mr. Ewan] reported to the FX & MM Committee that Panel Banks were submitting LIBOR based on a range of factors, including derivatives positions, and that the FX & MM Committee accepted this practice and made no effort to clarify or alter either LIBOR's definition or submission process, nor even to admonish the Panel Banks.").) Accordingly, through Mr. Ewan's testimony, Defendants would establish that the BBA condoned LIBOR submissions which reflected the financial interests of the submitting institution. Because the FX

2

& MM Committee was the sole arbiter of what constituted an acceptable LIBOR submission, Mr. Ewan's testimony will assist Defendants in refuting the Government's contention that a LIBOR submission is "false" if it reflects a Panel Bank's financial interests.

More specifically, Mr. Ewan would testify that he informed the FX & MM Committee that Panel Banks—which could often estimate a range of appropriate rates, any of which would constitute an accurate perception of that institution's cost of unsecured interbank funding—would select their LIBOR submission from within that range based on the institution's particular interests, *i.e.*, Mr. Ewan would testify that Panel Banks would "'bump'" their submissions "up or down" based on "personal financial interests." (Ord. at 5; Ex. 1 (Tr. of *R. v. Thomas Hayes*, T20137308, Southwark Crown Court ("Hayes Tr.")) June 9, 2015, Day 10, at 107:7 – 108:10 ("If a bank gets shown money in reasonable market size at a number of rates, you're not – you're not outside the definition if you say you're one [of] the lower ones or one of the higher ones" because, at the end of the day, "a bank can't submit a range, it has to submit one number . . .every day.")

After being informed of this practice by Mr. Ewan, the Committee did not communicate to the Panel Banks that they were setting LIBOR incorrectly. Instead, the Committee permitted those Banks to continue selecting LIBOR rates with an eye towards their own profits. (Ex. 1 (Hayes Tr.) June 5, 2015, Day 8, at 143:22 – 144:15 (Committee informed that because a Panel "bank's profit depends partially on the LIBOR[,] it prefers a high or low LIBOR on a specific date."); June 8, 2015, Day 9, at 23:24 - 25:19 (Committee informed of Panel Banks whose "LIBOR quotes are high because they are set by the treasury function within the bank" which then "goes on to use the LIBOR rate internally in the bank," so that "the treasury department can make extra profit by charging other departments in the bank itself at that

3

artificial rate!"), at 49:16 – 49:19 (Committee informed that "it is in the interests of most of the contributors to set there [sic] contributed rates at a few points higher. This is because it makes their loan book a bit more profitable.").)

    A Panel Bank's position in the derivatives market was just one of several commercial interests that Panel Banks would consider when choosing among a range of reasonable submissions. Mr. Ewan would testify that he specifically informed the FX & MM Committee that Panel Banks were selecting their LIBOR based on trading positions in the derivatives market—the alleged criminal conduct described in the Superseding Indictment—but the Committee did not put a stop to the practice. (*Id.* (Hayes Tr.) June 8, 2015, Day 9, at 18:21 – 20:19 (Committee informed that Credit Suisse believed Panel Banks were quoting high or low LIBOR rates depending on their derivative positions), at 21:7 – 21:9 (Committee informed that HSBC "suspect[s] that certain nameless contributors might be setting their rates with an eye on their derivatives book."), at 53:15 – 53:22 (Committee informed that "[r]ate setters are obviously setting to suit their underlying positions to some extent. If they're long, they will set below. If they're being aggressive, they will set above."), at 111:15 – 112:11 (Committee member aware that "[f]or some years the concept of funding levels beyond three months has been completely speculative and therefore based on the futures strip and more accurately the swap level for the comparative period" and that some banks based their LIBORs on the swap rate).)

    Such testimony is material for Rule 15 purposes, because it undercuts the Government's argument that any LIBOR submission which reflected a bank's interest is necessarily "false and fraudulent." The evidence Mr. Ewan would offer would allow the jury to make an informed decision about whether it was "false and fraudulent" for a setter to submit a

LIBOR that portrayed his honest perception of the price of interbank funds, while also reflecting the interests of his employer. (*See* Reply at 3-7.)

## II. MR. EWAN WOULD TESTIFY THAT MARKET PARTICIPANTS WERE INFORMED THAT LIBOR WAS RIGGED.

The Order states that Mr. Ewan's testimony does not meet the standard for a Rule 15 deposition because he would not testify that he informed market participants that LIBOR was "rigged." (Ord. at 5-6.) Without this testimony, the Court concluded that Mr. Ewan's testimony would not be relevant to the materiality of Defendants' allegedly "false" LIBOR submissions. (*Id.*) The Court described the materiality test as whether a "reasonable participant in the LIBOR-related marketplace [would] be influenced in his decision by knowing that the LIBOR rate was artificially manipulated for the benefit of certain persons' personal financial interests." (*Id.*)

Although materiality is assessed objectively (*id.*), it is nevertheless *relevant* to the issue of materiality whether market participants who *did* know "that the LIBOR rate was artificially manipulated for the benefit of certain persons' personal financial interests" found that information influential. (*Id.*) Here, Defendants, through Mr. Ewan, would demonstrate that the very counterparties the Government alleges were defrauded were not only aware that LIBOR was "rigged" and that Panel Banks were selecting LIBOR submissions based on their derivatives positions and other self-interested factors, but also that those counterparties continued to enter into LIBOR-based transactions regardless of their knowledge of that fact.

The Government has indicated that it plans to call trial witnesses from Citibank, Bank of America, and JP Morgan to testify regarding their expectations while entering into swap agreements with Rabobank.[1] Mr. Ewan would testify that he informed Citibank, Bank of

---

[1] Bank of America is included in the Superseding Indictment as "Bank-B" and Citibank is described as "Bank-C." (Superseding Ind. ¶¶ 21-22, 102, 114, June 25, 2015, ECF No. 62.)

America, and JP Morgan—each of which were members of the FX & MM Committee—that LIBOR was set to benefit the interests of the Panel Banks.  (*Supra* at Point I; Defs. Br. at 7; Reply at 7-8; *see also* Ex. 1 (Hayes Tr.) June 5, 2015, Day 8, at 114:23 – 115:4 (Bank of America admitting that it "sets its rates 4 basis points above where [it] could raise funds" in order to generate "the return" it wanted); June 9, 2015, Day 10, at 96:24-97:17 (Citibank understood that LIBOR was "wrong" because there was "more money to be made from higher LIBOR" and also an "[i]ncentive to quote lower."); June 10, 2015, Day 11, at 24:13 – 25:19 (JP Morgan acknowledging that Panel Banks "report false rates at little to no risk for their own gain," and being told by Mr. Ewan that rates reflect "more cheating, especially by treasury departments who want lower prices.").)  Because the jury must evaluate whether Defendants' allegedly false submissions were material, the defense is entitled to show that these counterparties knew that LIBOR was "rigged" as they continued to enter into LIBOR-based transactions with Rabobank.

### III.   MR. EWAN'S TESTIMONY IS NOT HEARSAY OR OPINION EVIDENCE.

The Order states that "[m]ost, if not all, [of Mr. Ewan's proposed testimony] would be inadmissible as hearsay and/or opinion evidence." (Ord. at 5.)  Under Rule 801(c)(2) of the Federal Rules of Evidence, a statement is not hearsay unless "a party offers [it] in evidence to prove the truth of the matter asserted in the statement."  Here, Mr. Ewan's testimony would not be offered for its truth, *i.e.,* to prove that LIBOR was rigged or that LIBOR submissions were selected based on the financial interests of Panel Banks.  Rather, Mr. Ewan's testimony would be offered to demonstrate knowledge, understanding and acceptance by the FX & MM Committee of the practice of selecting LIBOR submissions based on Panel Banks' interests.

In addition, the defense does not intend to elicit Mr. Ewan's opinions, but rather expects that he would testify about his knowledge of, and interactions with, the FX & MM Committee, as well as his conversations with Mr. Allen.[2] To the extent any opinions were to be elicited—which the defense does not anticipate—such testimony would fall squarely within the definition of "lay" testimony described in Federal Rule of Evidence 701, which provides that lay witnesses may testify about matters "rationally based on the witness's perception" so long as that testimony is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Mr. Ewan's testimony does not depend on any specialized knowledge but rather concerns communications he personally participated in, as well as his own first-hand observations. Thus, to the extent any opinions were to be elicited from Mr. Ewan, they would constitute appropriate lay witness testimony.

In any event, the question of whether a Rule 15 deposition should be granted is separate from the admissibility of the deposition testimony at trial. *See United States v. Little*, No. 12–cr–00647 (ALC), 2014 WL 3604417, at *2 (S.D.N.Y. July 16, 2014) (permission to take a Rule 15 deposition is a separate issue from the deposition's admissibility; evidentiary objections can be raised at the deposition and decided at trial); *United States v. Vilar*, 568 F. Supp. 2d 429, 440 n.10 (S.D.N.Y. 2008) ("[w]hether the deposition testimony actually will be deemed material and admissible at trial is a different matter" from the question of whether a Rule 15 deposition is warranted); *United States v. Mann*, 590 F.2d 361, 366 (1st Cir. 1978) ("When the question is close a court may allow a [Rule 15] deposition in order to preserve a witness' testimony, leaving until trial the question of whether the deposition will be admitted as

---

[2] The Government also intends to offer into evidence Mr. Allen's communications with Mr. Ewan, and has even gone so far as to play one such recording in open court. The defense is entitled to examine Mr. Ewan about his understanding of what he is saying to Mr. Allen and what Mr. Allen is saying to him in those communications.

7

evidence."). Therefore, this Court should permit a Rule 15 deposition of Mr. Ewan and determine at trial whether portions of his testimony are inadmissible.

## CONCLUSION

Accordingly, Defendants respectfully ask that the Court reconsider its decision to deny Defendants' motion for a Rule 15 deposition of Mr. Ewan.

Dated:  New York, New York
        August 26, 2015

**WILLKIE FARR & GALLAGHER LLP**

By:  /s/ Michael S. Schachter
     Michael S. Schachter
     Casey E. Donnelly
     787 Seventh Avenue
     New York, New York 10019-6099
     Phone: (212) 728-8000

*Attorneys for Defendant Anthony Allen*

**TOR EKELAND, P.C.**

By:  /s/ Tor Ekeland
     (electronic signature w/permission)
     Tor Ekeland
     Aaron Williamson
     195 Plymouth Street, 5th Floor
     Brooklyn, New York 11201-1133
     Phone: (718) 737-7264

*Attorneys for Defendant Anthony Conti*