UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | S4:14-cr-00272-JSR |
| | : | |
| | : | |
| ANTHONY ALLEN, et al | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S MOTION TO INTRODUCE EVIDENCE TO PROVE RABOBANK WAS AN AFFECTED FINANCIAL INSTITUTION WITH THE MEANING OF 18 U.S.C. §§ 20 and 3293(2)**

ANDREW WEISSMANN
Chief, Fraud Section

CAROL SIPPERLY
Senior Litigation Counsel
BRIAN R. YOUNG
Senior Trial Attorney
U.S. Department of Justice
Criminal Division
1400 New York Ave., N.W.
Washington, D.C. 20005
(202) 616-3114

JEFFREY D. MARTINO
Chief, New York Office

MICHAEL T. KOENIG
Trial Attorney
U.S. Department of Justice
Antitrust Division
450 5th Street, N.W.
Washington, D.C. 20001
(202) 616-2165

**Table of Contents**

BACKGROUND ................................................................................................................1

ARGUMENT....................................................................................................................3

CONCLUSION..................................................................................................................8

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                       Page(s)

*Hamling v. United States*,
   418 U.S. 87 (1974) ............................................................................................................. 3

*United States v. Countrywide Fin. Corp.*,
   996 F. Supp. 2d 247 (S.D.N.Y. Feb. 18, 2014) ............................................................... 7, 8

*United States v. D'Amelio*,
   683 F.3d 412 (2d Cir. 2012)
   (citing *United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007)) .......................................... 4, 5

*United States v. Frank*,
   156 F.3d 332 (2d Cir. 1997) ............................................................................................ 4, 6

*United States v. Heinz*,
   790 F.3d 365 (2d Cir. 2015) ............................................................................................... 7

*United States v. Morgenstern*,
   933 F.2d 1108 (2d Cir. 1991) ............................................................................................. 6

*United States v. Stavroulakis*,
   952 F.2d 686 (2d Cir. 1992)
   (quoting *United States v. Silverman*, 430 F.2d 106 (2d Cir.),
   *modified*, 439 F.2d 1198 (2d Cir.1970)) ........................................................................... 6

*United States v. Stringer*,
   730 F.3d 120 (2d Cir. 2013) ............................................................................................ 4, 5

**Statutes**                                                                                                                    Page(s)

18 U.S.C. § 20(1) .................................................................................................................... 5

The Court should permit the government to introduce evidence short of the Deferred Prosecution Agreement ("DPA") and the amount of the fine paid by Rabobank to prove that Rabobank was an affected financial institution within the meaning of 18 U.S.C. §§ 20 and 3293(2) to prove the 10-year statute of limitations. Such proof would include testimony from a Rabobank representative that, as a result of the conduct of the defendants and their co-conspirators in manipulating LIBOR, Rabobank was exposed to civil and criminal liability, incurred significant legal fees, paid fines, and suffered reputational harm. First, the allegations in the indictment regarding an effect on a financial institution are sufficiently broad to encompass an effect on Rabobank itself, and the indictment alleges that Rabobank is a financial institution. Second, even if Rabobank is not alleged to have been affected, proof that it was an affected financial institution would not be a constructive amendment of the indictment. Finally, proof of Rabobank as an affected financial institution would be, at most, a non-prejudicial variance.

## BACKGROUND

Count One of the indictment alleges, in the statutory allegations, that the charged wire fraud scheme "affect[ed] a financial institution." (Superseding Indictment (S4) ¶ 27(A).) Each of the substantive counts of the indictment includes a materially indistinguishable allegation. The speaking allegations of the indictment specifically allege that Rabobank was "a financial institution and global financial services company . . . with branches in the United States that were insured by the Federal Deposit Insurance Corporation ('FDIC')." (Superseding Indictment (S4) ¶ 10.) This allegation was included in the indictment to establish that Rabobank qualifies as a financial institution for purposes of 18 U.S.C. § 20, a requirement for invoking the ten-year statute of limitations set forth in 18 U.S.C. § 3293(2). The indictment similarly alleges that

1

Bank-B and Bank-C (Bank of America and Citibank, respectively) were "financial institutions" within the meaning of these statutes. (Id. ¶¶ 21-22).

The indictment then broadly alleges that "[t]he scheme had an effect on one or more financial institutions, within the meaning of Title 18, United States Code, Sections 20 and 3293(2)," and that "[t]he conduct of the conspirators caused financial institutions to be susceptible to substantial risk of loss and to suffer actual loss." (Id. ¶ 28.) These allegations are sufficiently broad to encompass effects both on Rabobank itself and on Rabobank's counterparties. To be sure, paragraph 28 of the indictment goes on to allege that the defendants foresaw effects on counterparties in the United States resulting from their manipulation of LIBOR. That language, however, addressed in significant part the nexus of the defendants' conduct to the United States and in no way limited the types of financial institutions that were affected by the defendants' conduct or the manner in which such institutions were affected. In this same vein, the indictment specifically alleges that two banks located in the United States, Bank of America and Citibank, were "directly affected" by the charged conduct on two particular dates. (Id. ¶¶ 102, 114.) The fact that the defendants' purpose was to *defraud* counterparties (including certain counterparties located in the United States that were financial institutions) does not change the fact that other financial institutions, including Rabobank itself, were *affected* within the meaning of 18 U.S.C. § 3293(2) and under the broad allegations contained in paragraph 28 of the indictment.

Through the production of discovery and other disclosures following the filing of the indictment, the government has made plain to the defendants its intent to trigger the ten-year limitations period by demonstrating that Rabobank was affected by the conduct of the defendants and their co-conspirators. On January 6, 2015, approximately nine months before the trial in this

2

case began, the government explained to Conti's counsel that one of the theories upon which the government intended to rely in order to invoke the ten-year limitations period was that Rabobank itself was affected by the conduct of its employees in manipulating LIBOR. Then, on March 20 and March 30, 2015, the government produced to Allen and Conti, respectively, a certificate establishing that Rabobank NA was insured by the FDIC. The government produced this certificate in order to establish that Rabobank qualified as a "financial institution" as defined in 18 U.S.C. § 20, a necessary predicate for invoking the limitations period set forth in 18 U.S.C. § 3293(2), and for no other reason. Shortly thereafter, on April 17, 2015, the government sent to the defendants a notice pursuant to Federal Rule of Criminal Procedure 12.4 listing Rabobank as a victim of the charged offenses. (Rule 12.4 Corporate Disclosure Statement ¶ 29, ECF No. 55 (filed under seal).) That notice was subsequently filed under seal with the Court. More recently, by email sent to counsel for the defendants on September 8, 2015, the government wrote, in explaining a proposed stipulation that included a discussion of the deferred prosecution agreement between the government and Rabobank, that one of the "financial institutions affected by the conduct [of the defendants in manipulating LIBOR] was Rabobank itself."

## ARGUMENT

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). "[T]o satisfy the pleading requirements of Rule 7(c)(1), an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime. An indictment need not be

perfect, and common sense and reason are more important than technicalities." *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (citations and quotation marks omitted).

"To prevail on a constructive amendment claim, a defendant must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." *United States v. Frank*, 156 F.3d 332, 337 (2d Cir. 1997). When confronted with claims of constructive amendment, the Second Circuit "has 'consistently permitted significant flexibility in proof, provided that the defendant was given *notice* of the *core of criminality* to be proven at trial.'" *United States v. D'Amelio*, 683 F.3d 412, 417 (2d Cir. 2012) (citing *United States v. Rigas*, 490 F.3d 208, 228 (2d Cir. 2007)).

"A variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Frank*, 156 F.3d at 337 n.5 (citations omitted). Thus, "[w]hen the charges in an indictment have stated the elements of the offense and provided even minimal protection against double jeopardy, [the Second Circuit] has "'repeatedly refused, in the absence of any showing of prejudice, to dismiss . . . charges for lack of specificity.'" *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999) (quoting *United States v. McClean*, 528 F.2d 1250, 1257 (2d Cir. 1976))." *Stringer*, 730 F.3d at 124.

Here, the government's allegations are plainly sufficient under the standard set forth in *Hamling* and *Stringer* to encompass Rabobank as an affected financial institution. First, the indictment very clearly states the elements of the offense. (Superseding Indictment ¶¶ 27, 148, 150, 152, 154, 156.) Second, the 36-page, 161-paragraph indictment is sufficiently detailed – including "substantial additional detail as to the means by which [the defendants] committed the

4

offense," *Stringer*, 730 F.3d at 124 – to protect against double jeopardy.  (See Superseding Indictment ¶¶ 29-146.)  The indictment plainly alleges that the defendants' scheme "had an effect on one or more financial institutions, within the meaning of Title 18, United States Code, Sections 20 and 3293(2)" and that "[t]he conduct of the conspirators caused financial institutions to be susceptible to substantial risk of loss and to suffer actual loss."  (Superseding Indictment ¶¶ 27(A), 28.)  Thus, even if no specific affected financial institutions were identified in the indictment, it would still be sufficient under Second Circuit law.  *See Stringer*, 730 F.3d at 127 (holding, in a challenge to a conviction for aggravated identity theft, that an indictment was constitutionally adequate "notwithstanding the failure . . . to name the persons whose means of identification were used in the commission of bank fraud"); *D'Amelio*, 683 F.3d at 423 (holding, in a child enticement case, that indictment was constitutionally adequate where "the essential elements of the enticement crime involved communications conveyed by facilities of interstate commerce, not the specific interstate commerce facilities used to achieve these communications").

But Rabobank was identified in the indictment as "a financial institution . . . with branches in the United States that were insured by the Federal Deposit Insurance Corporation." (Superseding Indictment ¶ 10.)  That identification in paragraph 10 dovetails with the allegations in paragraphs 27(A) and 28 – which state that the scheme had an effect on one or more financial institutions – and the language of section 20 – which defines "financial institution" as "an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act)."  18 U.S.C. § 20(1).  Indeed, there was no conceivable reason to allege that Rabobank has entities insured by the FDIC other than for the purpose of proving that the scheme affected Rabobank as a financial institution.  Therefore, proof of Rabobank as an affected financial

institution is encompassed within the allegations in the indictment.  *See United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) ("[W]e have noted that common sense must control, and that '[a]n indictment must be read to include facts which are necessarily implied by the specific allegations made.'" (quoting *United States v. Silverman*, 430 F.2d 106, 111 (2d Cir.), *modified*, 439 F.2d 1198 (2d Cir.1970)).

Proving that Rabobank was affected by the conduct of the defendants and their co-conspirators would certainly not be a constructive amendment of the indictment.  "[W]here a generally framed indictment encompasses the specific legal theory or evidence used at trial, no constructive amendment occurs."  *United States v. Morgenstern*, 933 F.2d 1108, 1115 (2d Cir. 1991).  Here, the general allegation in paragraph 28 of the indictment that the scheme "had an effect on one or more financial institutions" encompasses the theory that Rabobank itself was affected by the charged conduct.  Moreover, the "core of criminality" here is manipulating LIBOR, which would qualify as wire fraud regardless of whether the conduct affected a financial institution and regardless of whether the ten-year limitations period applies.  Thus, proof that Rabobank was an affected financial institution would not constructively amend the indictment.

Nor would it be a prejudicial variance.  "In the matter of the statute of limitations, as in the case of overt acts generally, our principal concerns are that a defendant have fair and adequate notice of the charges against him and have suffered no undue prejudice as a result of the proof offered."  *Frank*, 156 F.3d at 339.  As a result, "the statute of limitations may be satisfied by proof of an overt act *not explicitly listed in the indictment*, as long as a defendant has had fair and adequate notice of the charge for which he is being tried, and he is not unduly prejudiced by the asserted variance in the proof."  *Id.* (emphasis added).

Here, there is no prejudice because the government made numerous disclosures that allowed the defendants adequate opportunity to prepare their defense.

- January 6, 2015: The government told counsel for Conti that the effect on Rabobank as a financial institution was part of our theory of the case.
- March 20 and 30, 2015: The government produced Rabobank NA's FDIC insurance certificate to Allen and Conti, respectively.
- April 17, 2015: The government sent to the defendants a Rule 12.4 notice listing Rabobank as a victim.  That notice was subsequently filed under seal with the Court.
- September 8, 2015: The government wrote, in explaining a proposed stipulation that included a discussion of the deferred prosecution agreement between the government and Rabobank, that one of the "financial institutions affected by the conduct [of the defendants in manipulating LIBOR] was Rabobank itself."

On these facts, the defendants cannot plausibly claim that they did not have adequate opportunity to prepare their defense on this point.  Even giving the defendants every benefit of the doubt, they were explicitly informed of the government's theory in writing on September 8, 2015, five weeks before the trial in this case began.  The defendants thus had ample time to prepare a defense on the issue.  Indeed, it is difficult to see what possible defense could be raised as to the effect on Rabobank, as it is plainly a financial institution that was affected by the defendants' conduct in that, among other things, it was exposed to criminal and civil liability, incurred significant legal fees, paid large fines, and suffered reputational harm.  *See, e.g.*, *United States v. Heinz*, 790 F.3d 365, 367 (2d Cir. 2015) ("[T]he banks incurred significant payments and related fees, which were foreseeable to the Defendants at the time of their fraudulent activity."); *United States v. Countrywide Fin. Corp.*, 996 F. Supp. 2d 247, 249 (S.D.N.Y. Feb. 18, 2014) ("Any federally insured entity that commits these offenses *automatically* exposes itself to potential civil and criminal liabilities as a matter of law.") (emphasis added).

The defendants' argument that the indictment limits the government's theory to effects only on direct counterparty financial institutions is unpersuasive.  To be sure, the indictment

7

alleges that Bank of America and Citibank were "directly affected" by the defendants' scheme. However, that "directly" language serves only to illustrate one type of harm and should not limit the government from proving other types of effects. As this Court explained in considering language in FIRREA that is materially indistinguishable from the language in 18 U.S.C. § 3293(2):

> Any federally insured entity that commits these offenses *automatically* exposes itself to potential civil and criminal liabilities as a matter of law. *See, e.g.*, 18 U.S.C §§ 1341, 1343, 1344, 1962. Such potential liability is enough to satisfy FIRREA, since even the threat of criminal liability (let alone, as here, the actuality of civil liabilities) is bound to affect any federally insured entity in material fashion.

*Countrywide*, 996 F. Supp. 2d at 249-50 (emphasis added). Importantly, as the Court further explained, "the Government need not allege actual harm, but only facts that would demonstrate that the bank suffered an increased risk of loss due to its conduct." *Id.* at 250 (internal quotation marks omitted). And without question, the fraudulent scheme alleged in the detailed indictment provides ample facts that demonstrate an increased risk of loss to Rabobank in the form of liability, legal fees, and fines.

## CONCLUSION

For the reasons stated above, the Court should permit the government to introduce evidence short of the Deferred Prosecution Agreement ("DPA") and the amount of the fine paid by Rabobank to prove that Rabobank was an affected financial institution within the meaning of 18 U.S.C. §§ 20 and 3293(2) to prove the 10-year statute of limitations.

Dated: New York, New York
       October 14, 2015

| | |
|---|---|
| ANDREW WEISSMANN<br>Chief, Fraud Section | JEFFREY D. MARTINO<br>Chief, New York Office |
| <u>/s Brian R. Young</u><br>CAROL SIPPERLY<br>Senior Litigation Counsel<br>BRIAN R. YOUNG<br>Senior Trial Attorney<br>U.S. Department of Justice<br>Criminal Division<br>1400 New York Ave., N.W.<br>Washington, D.C. 20005<br>(202) 616-3114 | <u>/s Michael T. Koenig</u><br>MICHAEL T. KOENIG<br>Trial Attorney<br>U.S. Department of Justice<br>Antitrust Division<br>450 5th Street, N.W.<br>Washington, D.C. 20001<br>(202) 616-2165 |