# WILLKIE FARR & GALLAGHER LLP

MICHAEL S. SCHACHTER
212 728 8102
mschachter@willkie.com

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

October 25, 2015

**BY EMAIL**

The Honorable Jed S. Rakoff
United States District Court for the
Southern District of New York
Room 1340
500 Pearl Street
New York, NY 10007

Re:   *United States v. Anthony Allen, et al. (Case No. S4 14-CR-272 (JSR),
      Defendants' Additional Proposed Jury Instructions*

Dear Judge Rakoff:

      On October 6, 2015, Defendants submitted proposed jury charges. This letter, and the accompanying exhibits, supplements that submission.

      A.   <u>An Opinion Constitutes a False or Fraudulent Representation If Not Honestly Held.</u>

      In their October 6, 2015 proposed jury charge, Defendants requested the following instruction:

> A statement or a representation is false if it is untrue when made and was known to be untrue by the person making it or causing it to be made. A false statement or misrepresentation is a factual assertion that can be characterized as either true or false. A statement of opinion or an estimate may constitute a false statement or misrepresentation only if the Government can prove beyond a reasonable doubt that it was not honestly held by the person making it at the time it was made.

(Defs. Proposed Charges., Oct. 6, 2015, at 4.)

      The evidence supports Defendants' proposed instruction. For example, Professor Harris, the Government's expert witness, testified that LIBOR submissions were personal opinions of the designated setter, and not facts. (Tr. (Oct. 14, 2015) at 145:17-25 ("There's a guy who's designated as the setter, and he basically collects information, forms an opinion."); *id.* at 154:13-16 ("Q. I believe, as you testified, it needn't be transaction-based. It was their subjective view of where they could borrow money on that particular day. Is that correct? A. It's their view of -- yes.").) The

October 25, 2015
Page 2

Government's cooperating witnesses also confirmed that a LIBOR submission was, by definition, a perception of Rabobank's borrowing costs in the interbank market, held by a LIBOR submitter on a given day. (Tr. (Oct. 15, 2015) at 183:10-14 (testimony from L. Stewart regarding the responsibility of a LIBOR setter: "There would be a number of rates from overnight to one year and there would be a perceived rate that Rabobank felt like it would get money in the market and that would be what he would submit."); Tr. (Oct. 22, 2015) at 637:22-25 (P. Robson testifying that "the definition of LIBOR is to set your rates where you feel or you perceive that you will receive funding or borrow money in the [interbank] market").) Because the Government's witnesses agree that LIBOR submissions are statements of "opinion," not fact, Defendants' proposed jury instruction is appropriate and Defendants respectfully submit that the Court should instruct the jury that neither Mr. Allen or Mr. Conti can be found guilty of wire fraud unless the jury finds (among other things) that at the time they were made, Defendants' LIBOR submissions did not constitute Defendants' honestly held opinion of Rabobank's borrowing costs.

### B. A Financial Institution is Only "Affected" If Actual Loss or Risk Of Loss Was Not *De Minimis*.

The Government has alleged that Bank of America and Citibank were "affected" by Defendants' alleged conduct. (*Id.* ¶¶ 21-22.) More specifically, the Indictment alleges that because Citibank "had an interest swap agreement with Rabobank, the profitability of which was tied to LIBOR," Citibank was "directly affected" by the alleged manipulation of the Yen LIBOR rate on January 24, 2008. (*Id.* ¶ 102.) The Government also alleges that because Bank of America had "an interest swap agreement with Rabobank, the profitability of which was tied to LIBOR," Bank of America was "directly affected" by the alleged manipulation of the Yen LIBOR rate on March 19, 2008. (*Id.* ¶ 114.)

Defendants' October 6 submission included a proposed jury charge regarding "affect" on a financial institution, but Defendants wish to supplement that charge in light of *United States v. Carollo*, 2011 WL 3815322 (S.D.N.Y. Dec. 14, 2011). *Carollo* holds that "[a]lthough Congress intended the language 'affects a financial institution' to be broadly construed . . . this Court cannot interpret § 3293 to be so broad as to allow a ten-year statute of limitations to apply where, as here, the government has not alleged that the financial institution suffered any actual loss or at most the risk of loss is *de minimis*." 2011 WL 3815322, at *2. *De minimis* means negligible, of little importance, or insignificant. *See Black's Law Dictionary* (10th ed. 2015); *The American Heritage Dictionary* (5th ed. 2011). Accordingly, Defendants seek the following instruction regarding an "affect" on a financial institution:

> With respect to the fourth element—affecting a financial institution—the Government must prove beyond a reasonable doubt that a financial institution was affected by the scheme to defraud as alleged in the Indictment. What this means is that the Government must prove beyond a reasonable doubt that Bank of America or Citibank—the two financial institutions that the Government has named in the Indictment in this case—were banks whose deposits were insured by the Federal Deposit Insurance Corporation, and that Bank of America or Citibank were

October 25, 2015
Page 3

affected by the scheme to defraud by means of an interest rate swap opposite Rabobank, the profitability of which was tried to LIBOR.

To be affected by a scheme to defraud means that either Bank of America or Citibank either suffered an actual loss, or were exposed to a new or increased risk of loss as a result of the scheme to defraud, and that neither the actual loss nor risk of loss was *de minimis*. *De minimis* means negligible, of little importance, or insignificant.

### C. A Multiple Conspiracy Instruction is Appropriate.

In light of the evidence presented by the Government during its case-in-chief, Defendants believe a multiple conspiracy instruction—not originally included in their October 6 Proposed Charge—is appropriate. Defendants believe the jury may reasonably conclude that Paul Robson and Takayuki Yagami were engaged in a conspiracy to manipulate the JPY LIBOR. However, because the Indictment alleges a single conspiracy to manipulate both JPY and USD LIBOR, (Ind. at ¶ 28), Defendants fear that without a multiple conspiracy instruction, the jury will conclude that so long as the Government proved the existence of a conspiracy with respect to JPY LIBOR, Defendants must be found guilty, even though the jury may also reasonably conclude that Defendants were not involved in the conspiracy to manipulate JPY LIBOR.

Defendants seek an adapted version of the multiple conspiracy charge found in *L. Sand et al.* Modern Fed. Jury Inst. – Crim., Inst. 19.01, which they have amended, in part, based on the Second Circuit's holding in *United States v. McDermott*, 245 F.3d 133 (2d Cir. 2001). In *McDermott*, the Second Circuit reversed a conspiracy conviction on the basis that the defendant (an insider tipper) could not have rationally been a member of a conspiracy with a tippee who, unbeknownst to the defendant, was simultaneously passing along the defendant's insider information to another tippee, whose identity and existence was unknown to the defendant. *McDermott*, 245 F.3d at 137. In light of *McDermott*, Defendants request that the following charge be read to the jury:

> In this case, the government has charged the existence of a single overall conspiracy. Defendants contend that there was no single overall conspiracy. Whether there existed a single unlawful agreement, or many such agreements, or indeed, no agreement at all, is a question of fact for you, the jury, to determine in accordance with the instructions I am about to give you.
>
> When two or more people join together to further one common unlawful design or purpose, a single conspiracy exists. By way of contrast, multiple conspiracies exist when there are separate unlawful agreements to achieve distinct purposes. Proof of several separate and independent conspiracies is not proof of the single, overall conspiracy charged in the indictment, unless one of the conspiracies proved happens to be the single conspiracy described in the indictment.

October 25, 2015
Page 4

> If you find that the conspiracy charged in the indictment did not exist, you cannot find any defendant guilty of the single conspiracy charged in the indictment. This is so even if you find that some conspiracy other than the one charged in this indictment existed, even though the purposes of both conspiracies may have been the same, and even though there may have been some overlap in membership. Similarly, if you find that a particular defendant was a member of another conspiracy, and not the one charged in the indictment, then you must acquit the defendant of the conspiracy charge.
>
> Therefore, what you must do is determine whether the conspiracy charged in the indictment existed. If it did, you then must determine the nature of the conspiracy and who were its members.

An amended version of Defendants' Proposed Jury Charges is attached as Exhibit A. A redline showing the changes from Defendants' October 6 submission is attached as Exhibit B.

Respectfully submitted,

Michael S. Schachter

cc:
Tor Ekeland
Aaron Williamson
Tor Ekeland, P.C.
(*Counsel for Defendant Anthony Conti*)

Carol Sipperly
Brian Young
Michael Koenig
U.S. Department of Justice, Fraud Section