# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

November 1, 2015

**BY EMAIL**

The Honorable Jed S. Rakoff
United States District Court for the
Southern District of New York
Room 1340
500 Pearl Street
New York, NY 10007



Re:   *United States v. Anthony Allen, et al. (Case No. S4 14-CR-272 (JSR),*

Dear Judge Rakoff:

Pursuant to the Court's direction by email on November 1, 2015, and without waiving their objection to the issuance of a conscious avoidance instruction, Defendants hereby submit certain amendments to the Court's drafted instruction.

The Court's proposed instruction permits the jury to use willful blindness as proof of Defendants' knowledge that "traders were asking the bank's LIBOR setters to submit artificial rates that were intended to help their trading positions, . . ." But, such use is inappropriate because Defendants have not claimed a lack of knowledge of that fact.

A "conscious avoidance instruction may only be given if (1) the defendant asserts the lack of some specific aspect of knowledge required for conviction and (2) the appropriate factual predicate for the charge exists, i.e. the evidence is such that a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *United States v. Goffer*, 721 F.3d 113, 127 (2d Cir. 2013).

Indeed, Mr. Allen on direct examination expressly described his knowledge of this fact. (Tr. at 1203:14-15 (with respect to Lee Stewart, "he would say to me, he said this level and . . . he would say, that suits me, that suits my position."); Tr. at 1206:3-8 (Q: What was your understanding, when you did receive these communications that we've seen in this case, what was your understanding as to why they were sending you their preferences?  A: I believed they were doing it to better themselves, to benefit the bank and make more money.").)

Likewise, counsel for Mr. Conti has not argued that his client was unaware that traders were making requests. To the contrary, Mr. Williamson explicitly addressed his client's awareness of

trader requests, telling the jury: "In the end you will see that [the government] found 15 or so unflattering messages. And they will look something like this. Instances where a swap trader at the bank, like Lee Stewart, who you heard called the ambassador, would say he would prefer a higher or lower one-month, three-month, six-month LIBOR on a given day because he had a position. And the government will show you three things about requests like this. They will show you the request itself, usually an e-mail or a quick instant message. They will show you the traders' positions on that day, that Lee Stewart would have benefited from a higher or lower LIBOR, as he had requested, and they will show you Tony's submission. And they will suggest, but they won't be able to prove, that that submission was based on the trader's request rather than all of these other factors." (Tr. at 109:3-18.)

Defendants do not believe that the record includes a denial of any fact that would lend itself to a willful blindness instruction, but specifically submit that the one described in the Court's instruction is not appropriate. Accordingly, notwithstanding their objection to the instruction, Defendants have revised the Court's instructions to use as an example a different fact that could more arguably lend itself to a conscious avoidance instruction (although still in Defendants' view, not appropriately).

In addition, Defendants believe the Court's drafted instruction permits the jury to use the willful blindness doctrine for purposes impermissible under controlling Second Circuit authority. For example, the Court's drafted instruction suggests that the jury can use the "willful blindness" doctrine to find that Mr. Allen or Mr. Conti had knowledge that they were "participating" in the criminal scheme. While willful blindness may be appropriately used to show that a defendant knew a criminal scheme existed, it cannot be used to show his volitional participation in the scheme. *United States v. Samaria*, 239 F.3d 228, 239-240 (2d Cir. 2001) (overruled, in part, on other grounds) (where "the substantive offenses underlying the conspiracy charges require…the specific intent to…commit credit card fraud, and not simply knowledge that these crimes were afoot, conscious avoidance would not provide the requisite proof needed for conviction."). In addition, the instruction drafted by the Court allows the jury to "infer," using the willful blindness doctrine, that Mr. Allen and Mr. Conti understood that "manipulation was going on." However, the fact that traders were making requests for certain LIBOR rates does not mean "manipulation" was going on and allowing the jury make such an inference is improper. Moreover, "manipulation" would be the "result" of the alleged criminal conduct, rather than a fact that the Defendants have denied knowledge of, and the Second Circuit has held that "conscious avoidance instructions are only appropriate where knowledge of an existing fact, and not knowledge of the result of defendant's conduct, is in question." *United States v. Gurary,* 860 F.2d 521, 526 (2d Cir.1988).

Defendants' proposed revisions to the Court's drafted instruction is attached as Exhibit A.

Respectfully submitted,

Michael S. Schachter

November 1, 2015

On Behalf Of:
Tor Ekeland
Aaron Williamson
Tor Ekeland, P.C.
(*Counsel for Defendant Anthony Conti*)

cc:
Carol Sipperly
Brian Young
Michael Koenig
U.S. Department of Justice, Fraud Section

Exhibit A

DEFENDANTS' PROPOSED INSTRUCTION

(Adapted from *U.S. v. Goffer*, 721 F.3d 113, 126-127 (2d Cir. 2013).)

*Conscious Avoidance*

As to the second element—that the defendant you are considering participated in the scheme knowingly, willfully, and with a specific intent to defraud.  To act "knowingly" means to act consciously and deliberately rather than mistakenly or inadvertently.  To act "willfully" means to act voluntarily and with an improper purpose.  To act with a "specific intent to defraud" goes further and requires that the defendant you are considering intended, at least in part, to deceive one or more of his trading counterparties in order to obtain money or property or to deprive one or more of the counterparties of material information (as previously defined), and to thereby harm one or more victims.[1]

While in order to convict the Government must prove beyond a reasonable doubt that a defendant acted with a specific intent to defraud, knowledge of a particular fact of consequence may be proved either directly or by proof that the defendant you are considering deliberately closed his eyes to what otherwise would have been obvious to him. If you find beyond a reasonable doubt that the defendant's ignorance of a fact of consequence was solely and entirely the result of a conscious purpose to avoid learning the truth, then this element may be satisfied.  However, guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish or mistaken.  If, for example, you find beyond a reasonable doubt that the defendant you are considering was aware that there was a high probability that a swap trader's request for a higher or lower LIBOR submission was based

---

[1]    Defendants do not waive their objection to other portions of the Court's charge, including that the purpose of the scheme was to "deprive one or more of the counterparties of material information."

15616064.1

solely on a desire to benefit a trading position and did not reflect an accurate perception of Rabobank's borrowing costs, but deliberately and consciously took steps to avoid learning this fact, then you may find that the defendant acted with knowledge of this fact.  However, if you find that the defendant actually believed that the request was an accurate estimate of Rabobank's borrowing costs, then you may not find knowledge of this fact.  It is entirely up to you to determine whether the defendant you are considering deliberately closed his eyes and any inferences to be drawn from the evidence on this issue.