**UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,     :
    :
   v.     :
    :  Case No. S4 14-CR-272 (JSR)
ANTHONY ALLEN,     :
PAUL THOMPSON,     :
TETSUYA MOTOMURA, and     :
ANTHONY CONTI,     :
    :
    Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO COMPEL FURTHER KASTIGAR DISCOVERY**

**WILLKIE FARR & GALLAGHER LLP**
Michael S. Schachter
Casey E. Donnelly
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

*Attorneys for Defendant Anthony Allen*

**TOR EKELAND, P.C.**
Tor Ekeland
Aaron Williamson
195 Plymouth Street, 5th Floor
Brooklyn, New York 11201-1133
(718) 737-7264

*Attorneys for Defendant Anthony Conti*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ....................................................................................................................4

ARGUMENT ........................................................................................................................8

I.     THE NOTES OF GOVERNMENT COOPERATOR PAUL ROBSON ARE
NOT PROTECTED AND SHOULD BE DISCLOSED TO DEFENDANTS. ................8

II.    DEFENDANTS ARE ENTITLED TO FACTUAL INFORMATION ABOUT
ANY EXPOSURE TO THEIR COMPELLED TESTIMONY OF COUNSEL
FOR GOVERNMENT COOPERATOR PAUL ROBSON. ............................................13

III.   DEFENDANTS ARE ENTITLED TO THE GOVERNMENT'S
PROSECUTION MEMOS OR OTHER DOCUMENTS DESCRIBING THE
BASES AND TIMING OF THE GOVERNMENT'S DECISION TO INDICT. ...........15

CONCLUSION ....................................................................................................................17

# TABLE OF AUTHORITIES

**Case**                                                                                      **Page(s)**

*Alpex Computer Corp. v. Nintendo*,
  No. 86 CIV. 1749 (KMW), 1994 WL 330381 (S.D.N.Y. July 11, 1994) ........................15

*Blumenthal v. Drudge*,
  186 F.R.D. 236 (D.D.C. 1999)...................................................................................11

*Graves v. Deutsche Bank Securities, Inc.*,
  No. 07 Civ. 05471 (BSJ)(KNF), 2011 WL 721558 (S.D.N.Y. Feb. 10, 2011) ...........10, 11

*Hicks v. Bush*,
  452 F. Supp. 2d 88 (D.D.C. 2006) ...........................................................................10

*John Doe Co. v. United States*,
  350 F.3d 299 (2d Cir. 2003)....................................................................................16

*In re John Doe Corp.*,
  675 F.2d 482 (2d Cir. 1982)....................................................................................12

*Kastigar v. United States*,
  406 U.S. 441 (1972)...................................................................................1, 9, 13, 15

*Schomburg v. New York City Police Dept.*,
  298 F.R.D. 138 (S.D.N.Y. 2014) ..............................................................................11

*Trudeau v. New York State Consumer Protection Bd.*,
  237 F.R.D. 325 (N.D.N.Y. 2006)..............................................................................16

*United States v. Defonte*,
  441 F.3d 92 (2d Cir. 2006)....................................................................................9, 10

*United States v. Ghavami*,
  882 F. Supp. 2d 532 (S.D.N.Y. 2012).......................................................................11

*United States v. Kristel*,
  762 F. Supp. 1100 (S.D.N.Y. 1991)..........................................................................15

*United States v. Kurzer*,
  534 F.2d 511 (2d Cir. 1976)......................................................................................8

*United States v. Marcus Schloss & Co., Inc.*,
  No. 88 CR. 796 (CSH), 1989 WL 62729 (S.D.N.Y. 1989) .............................................12

*United States v. Mariani,*
 851 F.2d 595 (2d Cir. 1988) ........................................................................... 15

*United States. v. North,*
 910 F.2d 843 (D.C. Cir. 1990) ........................................................................... 8

*United States. v. North,*
 920 F.2d 940 (D.C. Cir. 1990) ................................................................... 13, 14

*United States v. Poindexter,*
 951 F.2d 369 (D.C. Cir. 1991) ................................................................... 8, 13

*In re van Bulow,*
 828 F.2d 94 (2d Cir. 1987) ........................................................................... 16

**Rules**

Fed. R. Civ. P. 26(b)(3) ........................................................................................ 11

Fed. R. Evid. 502(a) advisory committee's note ............................................. 15

**Other Authorities**

12 Fed. Proc., L. Ed. § 33:296 (2013) ............................................................... 16

Defendants Anthony Allen and Anthony Conti respectfully submit this memorandum of law in support of their motion to compel the Government, and Government cooperator Paul Robson, and his attorney, to produce certain documents and information, as described below.

## PRELIMINARY STATEMENT

Defendants have moved to dismiss the Superseding Indictment, or, in the alternative, for a new trial and the suppression of the testimony of Government cooperator Paul Robson, and all evidence derived from Mr. Robson's cooperation, because Mr. Robson, prior to his cooperation with the Government, reviewed Defendants' compelled statements to British authorities.   Having been exposed to Defendants' compelled statements, Mr. Robson's participation in Defendants' prosecution constitutes a violation of the Supreme Court's edict in *Kastigar v. United States*, in which the Court affirmed a "total prohibition" on the use, or derivative use, of a defendant's compelled testimony "in any respect."  *Kastigar v. United States*, 406 U.S. 441, 453 (1972).

Defendants contend that their compelled testimony was improperly used in at least four contexts:  *first*, Mr. Robson's review of Defendants' compelled statements was one of the motivating factors in his decision to cooperate with the Government; *second*, that Mr. Robson's cooperation, and the tainted statements he made to prosecutors as part of that cooperation, played an important role in the Government's decision to prosecute Defendants; *third*, that the grand jury indicted Defendants on the basis of tainted evidence, provided by Paul Robson and summarized to the grand jury by the case agent; and *fourth*, that Mr. Robson's tainted testimony at trial was used to convict Defendants.

Mr. Allen and Mr. Conti have no burden on the present motion:  the obligation to prove that no use, including in any of the above contexts, was made of Defendants' compelled

statements, falls entirely on the Government.   In addition, Defendants are entitled to cross-examine the Government's presentation.   During the *Kastigar* hearing on December 16 and 17, 2015 (the "*Kastigar* Hearing"), the Government called Mr. Robson to testify.   Mr. Robson claimed that his review of Defendants' compelled statements had no effect on him or on the information he provided to the Government and the jury.   However, during the Court's questioning of Mr. Robson, his counsel disclosed that Mr. Robson had authored notes during his review of Defendants' compelled testimony and prior to his cooperation with the Government and testimony in Defendants' trial.   These notes may very well impeach Mr. Robson's testimony that he was unaffected by his review of Defendants' compelled testimony, that he learned nothing new from his review, and that the compelled testimony was irrelevant to his decision to cooperate; at a minimum, these notes may offer the Court insight into Mr. Robson's review process—a highly material fact, given the issue in front of the Court.   Mr. Robson, however, has refused to produce his notes, on the basis that they are protected by the attorney-client and work-product privileges.   As set forth below, Mr. Robson is mistaken:  controlling authority from the Second Circuit holds that his notes are not protected, and even if they were, that such protection is not absolute and can be overcome by Defendants' substantial need for these critical materials.

Defendants also seek information from Mr. Robson's counsel, Justin Weddle of Brown Rudnick LLP, about his exposure to Defendants' compelled statements prior to preparing Mr. Robson for a proffer meeting with the Government in July 2014.   In an affidavit filed by the Government with the Court, Mr. Robson disclosed that he sent Mr. Weddle "certain FCA transcripts" in July 2014, prior to his meeting with Mr. Weddle.  (DX608S, at ¶7.)   If Mr. Weddle reviewed Defendants' compelled testimony and then used the information gleaned from that review to prepare Mr. Robson for his proffer, that would be a further *Kastigar* violation.

2

Defendants therefore seek factual information, as detailed below, from Mr. Weddle about whether, and when, he reviewed their compelled testimony.

Finally, Defendant seek documents from the Government that set forth in writing—memoranda, emails, notes, presentations—the bases for its decision to prosecute Defendants. The Government does not deny the existence of these documents, but rather claims it does not have to produce them because they are protected work-product. However, in the context of the current hearing, this is not a proper basis to withhold documents. The Government denies that Mr. Robson's cooperation was an important factor in its decision to file charges against Defendants and Special Agent Jeffery Weeks testified that a determination regarding Mr. Allen and Mr. Conti's indictment had been reached *before* the Government had ever spoken with Mr. Robson. Defendants are entitled to cross-examine that assertion and to discovery into the timing and bases for the Government's decision to indict Defendants.

The Government's refusal to produce these materials is unfair:  it has presented selective evidence—the uncorroborated assertion of Agent Weeks that determinations had been made concerning the Defendants—that help its case, but refuses to produce other evidence—the contemporaneous writings memorializing the indictment decision and the bases for it—which may undermine the credibility of Agent Weeks's testimony. There is no other source by which Defendants can obtain this evidence and the stakes are patently high in a criminal case. Indeed, it is self-evident that in any balancing between competing interests, a defendant's constitutional right must take precedence over whatever interest a cooperating government witness might have in his prior assessment of the evidence of a criminal scheme that he has already pled guilty to being a part of.

## BACKGROUND

On April 24, 2014, the Government presented evidence to the grand jury against Mr. Robson and two other former Rabobank traders, Paul Thompson and Tetsuya Motomura, and on April 28, 2014, the grand jury returned an Indictment.  (*See* Ind., Apr. 28, 2014, ECF No. 5 (the "April 2014 Indictment").)  The April 2014 Indictment was the culmination of a four year Government investigation into potential wrongdoing at Rabobank.  By April of 2014, the Government had conducted witness proffers with at least eighteen of Rabobank's former and current employees, and had reviewed over 200,000 documents produced by Rabobank.  By April 24, 2014, when the Government presented to the grand jury, it had also met twice with Takayuki Yagami, although his cooperation agreement, in which he admitted that he participated in a conspiracy with Paul Robson, Paul Thompson, and Tetsuya Motomura (but did not mention Mr. Allen or Mr. Conti) to manipulate LIBOR, was not signed until June 5, 2014.  (DX614O.)  At the time of the Government's April 24, 2014 presentation to the grand jury, it had met with every Rabobank witness, except Mr. Robson, and it possessed all of Defendants' emails and communications from Rabobank.  However, the Government did not charge either Mr. Allen or Mr. Conti with any wrongdoing, and neither was named as a defendant in the April 2014 Indictment.

Mr. Robson initiated plea negotiations in the summer of 2014.  On July 17 and 18, 2014, the Government conducted their first interview of Mr. Robson.  (DX608C.)  On August 5, 2014, approximately two weeks after its interview of Mr. Robson, the Government entered into a cooperation agreement with Mr. Robson.  (DX608O (Robson Plea Agr., Aug. 5, 2014).)  Mr. Robson's guilty plea was accepted by the Court on August 18, 2014.  (DX608T (Tr. of Plea 15:12-22, Aug. 18, 2014, ECF No. 21 ("Tr. of Robson Plea").)  During that appearance, the Government informed the Court that "in light of information that ha[d] come to light" as a result

4

of Mr. Robson's and Mr. Yagami's cooperation, the Government was "considering" filing a "superseding indictment  . . . involv[ing] other individuals."  (*Id.* at 25:15-23.)

Seven weeks later, on October 7, 2014, the Government returned to the grand jury, to present evidence against Mr. Allen and Mr. Conti and on October 16, 2014, the grand jury returned an Indictment.  (*See generally* Superseding Ind., Oct. 16, 2014, ECF No. 24 ("First Superseding Indictment").)  Over the course of his cooperation and throughout the next year, Mr. Robson participated in at least fifteen interviews with the prosecutors trying this case, not including trial preparation, and testified at trial for several days against Defendants.  His cooperation was especially important to the Government's case because, as Agent Weeks admitted during the *Kastigar* Hearing, Mr. Robson was the only witness interviewed by the Government who said that Mr. Allen had "instructed" him to accommodate trader requests.  (Tr: 253:10-14.)

It is undisputed that Mr. Robson reviewed Defendants' compelled testimony prior to cooperating with the Government.  In a declaration filed by the Government in August, Mr. Robson admitted that he had been provided with Defendants' compelled testimony and that he had "reviewed the materials over the course of 2-3 successive days sometime in or about November or December 2013." (DX608S (Ex. 5 to Gov. *Kastigar* Opp, Dkt No. 95-5) at ¶¶4, 5.) Mr. Robson's declaration did not disclose that he had taken notes during his review of Defendants' compelled testimony.  (*Id.*)  Nor did the Government include in Mr. Robson's declaration that Mr. Robson had done more than simply review Defendants' compelled testimony, although the Government knew that to be the case.  (*Compare* Tr. 77:22-24, 81:21 – 82:4 (Ms. Shaw admitting to the Court that she "made a request for the box of materials" and

learned there "were potentially markings") *with* DX906A – DX906N (correspondence between Defendants and Government, re: *Kastigar* discovery).)

In fact, even during the *Kastigar* Hearing, when Mr. Robson was asked by the Government, "And with respect to all of the [FSA] materials that you were forwarded by your lawyer, what, if anything, did you do with those materials in November of 2012?," he testified only that he had a "read through" and "highlight[ed] anything that was relevant or I had any questions about." (Tr. 5:21-6:2.)  Mr. Robson did not disclose that he had also taken notes during his review.

The Court also asked Mr. Robson about his review process:  "When you say you reviewed it, did you simply read it?  Did you mark-up or highlight certain passages?  Take me through the process of what you did in reviewing." (Tr: 76:4-77:7.)  Mr. Robson informed the Court, "I read though and as I read through I underlined, asterisked or something like that in the margin."  *Id*.  Mr. Robson did not disclose that in addition to adding "asterisks," he had also taken notes about Defendants' compelled testimony.  It wasn't until the Court asked Mr. Robson's attorney to explain the basis for the privilege assertion that it was disclosed that Mr. Robson had also written "handwritten notes" and "comments" on "separate pages," in addition to the "underlines" and "asterisks" Mr. Robson had testified about.  (Tr. 79: 2-8, 81:13-21.)

In addition to Mr. Robson, the Government also called Agent Weeks as a witness at the *Kastigar* Hearing.  During direct examination, Agent Weeks was asked, "How was Mr. Allen or Mr. Conti viewed prior to your meeting with Mr. Robson, and by viewed, I mean as a subject, witness, target?" (Tr. 150:18-23.)  Defendants objected and sought clarification about whether Mr. Weeks was being asked about "his own personal views or the views of the Department of Justice." (Tr. 150:24-152:1.)  The Court noted that Agent Weeks should testify

6

about his own views and the views of the Justice Department.  *Id*.  The Government did not object to this testimony.  *Id*.  Agent Weeks was then asked:

> **The Court:** So going back to Mr. Allen, prior to talking to Mr. Robson, do you know whether a determination had been reached, at least among the prosecutors that you were dealing with on this case, that would make it likely that Mr. Allen was going to be indicted?
>
> **Agent Weeks:** Yes, Your Honor.
>
> **The Court:** Now, what about Mr. Conti in the same frame?
>
> **Agent Weeks**: Yes, Your Honor.
>
> **The Court:** Go ahead, counsel.
>
> **Ms. Shaw:** Thank you, Your Honor.

(Tr. 152:25 – 153:8.)

Defendants were unable to fully cross-examine Agent Weeks on his assertion that a "determination had been reached" about Defendants before the Government spoke to Mr. Robson, because the Government has not produced any documents, including emails, memos, or attorney notes, which describe the timing and bases for its decision to indict Defendants.  On the basis of Agent Weeks' testimony, Defendants requested such materials.   Although the Government acknowledged the existence of such documents, Tr. 167:18-21, it objected to their production on the basis that they were protected work product.

At the conclusion of the *Kastigar* Hearing, the Court permitted Defendants to submit briefing on these discovery issues and reserved the question of whether the *Kastigar* Hearing might be re-opened for additional cross-examination of the Government's witnesses. (Tr. 257:20-258:24.)

## ARGUMENT

### I.   THE NOTES OF GOVERNMENT COOPERATOR PAUL ROBSON ARE NOT PROTECTED AND SHOULD BE DISCLOSED TO DEFENDANTS.

Mr. Robson's notes potentially contain evidence critical to Defendants' current motion.  The question in front of the Court is whether Mr. Robson's account was "shaped, altered, or [otherwise] affected" by his review of Defendants' compelled statements.  *United States v. Poindexter*, 951 F.2d 369, 373 (D.C. Cir. 1991).  *Kastigar* is violated when a defendant's compelled statements "refresh" a testifying witness's recollection, or when a witness uses the compelled testimony to "focus their thoughts, organize their testimony, or alter their prior or contemporaneous statements."  *United States. v. North*, 910 F.2d 843, 856 (D.C. Cir. 1990).  The Government must also prove that Mr. Robson's decision to cooperate was not motivated in any way by his review of Defendants' compelled testimony.  *United States v. Kurzer*, 534 F.2d 511, 517-18 (2d Cir. 1976) (admonishing the district court that it would not "end the matter" if the Government's cooperating witness denies that his review of the defendant's compelled testimony affected his decision to cooperate and encouraging the district court to "determine [the witness's credibility], not only in terms of his inclination to tell the truth, but also with regard to whether he is truly able to isolate the factors which convinced him to cooperate.  Human motivation is often difficult to discern, and a decision is frequently the product of several concurrent influences.")

During the *Kastigar* Hearing on December 16 and 17, 2015, Defendants demonstrated numerous inconsistencies between Mr. Robson's sworn statements to the FSA in January 2013—offered prior to his exposure to Defendants' compelled statements—and the statements he made to the Government and the jury after exposure to Defendants' compelled testimony.  Mr. Robson's mark-ups of Defendants' compelled testimony demonstrate that he

paid special attention to many of the exact passages in Mr. Allen's and Mr. Conti's FSA testimony that Defendants had suggested were responsible for the change in his testimony.[1]  *See* DX900A, at 30 (regarding "bonus pool" as a factor in bonuses); at 50-51, 134 (regarding Mr. Allen's testimony that Robson knew the definition of LIBOR); at 67 (regarding Mr. Allen's testimony to the FSA about his instructions to Mr. Robson about communications with Mr. Yagami and Mr. Thompson), at 91 (regarding Mr. Allen's testimony that he did not recall a conflicts-of-interest training); *see* DX901A, §2 at 21-23 (regarding Mr. Conti's communications with Paul Thompson about trading positions referencing LIBOR); §2 at 7, 20, 45-46 (regarding verbal requests from Lee Stewart); §3 at 5, 7 (regarding instructions given to LIBOR submitters). The changes between Mr. Robson's pre-exposure statements and the statements he made after reviewing Defendants' compelled testimony suggest that Mr. Robson was "affected" by his review; his mark-up of Defendants' compelled testimony confirms it further.  Defendants are entitled to see the notes Mr. Robson took during his review because this evidence is directly relevant to the effect that Defendants' compelled statements had on Mr. Robson.

Mr. Robson has taken the position that his notes are protected by the attorney-client privilege because he anticipated that he would discuss them with counsel, although he did not ultimately do so.  (Tr. 86:14-13.)  The question of whether Mr. Robson's notes are protected by the attorney-client privilege is controlled by the Second Circuit's decision in *United States v. Defonte*, 441 F.3d 92, 95-96 (2d Cir. 2006), where the Circuit held that a client's preparatory

---

[1]      Defendants note that they do not have any obligation to prove which portions of their compelled statements affected Mr. Robson or how or even whether he was affected at all. The *Kastigar* burden rests entirely on the Government, which must prove that Defendants' compelled statements had no effect, direct or indirect, on Mr. Robson. *Kastigar*, 406 U.S. at 460-61 (The Government's "burden of disproving use" of Defendants' compelled statements is "not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.")

notes are not protected unless they were actually communicated to the attorney.  In *Defonte*, the Second Circuit examined whether a client's journal—which contained notes of both the client's private conversations between her and her attorney, as well as entries made purportedly for the purpose of later discussions with her attorney—fell within the scope of the attorney-client privilege.  *Id*. at 95.  The Second Circuit held that the client's preparatory notes were not privileged, as they were never actually communicated to the attorney.  *Id*.

After examining two cases cited by the plaintiff that held that preparatory notes were privileged, the Second Circuit explained that "[c]entral to the finding of privilege in both decisions, it appears, is the fact that the notes were communicated by the client to the attorney.  Such a requirement comports with the language of the rule – *i.e.*, that there be a communication by the client – and makes sense from a policy perspective.  A rule that recognizes a privilege for any writing made with an eye toward legal representation would be too broad." *Id*; *Hicks v. Bush*, 452 F. Supp. 2d 88, 101 n.10 (D.D.C. 2006) (citing *Defonte* and stating: "A question recently answered in the negative by the Second Circuit is whether notes intended for an attorney are privileged if their content has not yet been communicated to the attorney.  The privilege requires an attorney-client *communication*.").

Similarly, in *Graves v. Deutsche Bank Securities, Inc.*, the court held that a client's handwritten notes, purportedly prepared in anticipation of retaining counsel, were not privileged because they were never communicated to counsel.   2011 WL 721558, at *2 (S.D.N.Y. Feb. 10, 2011).  The court explained: "Absent any evidence that a communication by the plaintiff to his counsel occurred, based on the plaintiff's handwritten notes, the burden of establishing the first element of the attorney-client privilege has not been met.  Accordingly, the Court finds that the plaintiff's handwritten notes are not protected by the attorney-client privilege

and must be surrendered to the defendant. *Id.* Because it is undisputed that Mr. Robson's notes were never communicated to his lawyer, they are not protected by the attorney-client privilege and must be disclosed to Defendants.

Mr. Robson's notes are also not protected by the attorney work-product doctrine. The discovery of attorney work product is governed in civil matters by the provisions of Fed. R. Civ. P. 26(b)(3), which provides in substantial part: "A party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or its representative. Only upon a showing that the party seeking discovery "has substantial need of the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent of the materials by other means." Courts have imported the basic tenets of the civil rule in criminal cases. "Substantial need" is not a readily-defined term, and courts have interpreted it differently depending on the facts of the matter at bar. For example, in *United States v. Ghavami*, 882 F. Supp. 2d 532, 541 (S.D.N.Y. 2012), the court noted that although a general claim of "relevance" did not constitute substantial need, a "showing that information is important to support some specific defense or to undermine a particular aspect of the government's case in a criminal proceeding may well constitute such a substantial need [to overcome work product protection]." 882 F. Supp. 2d at 541.

Mr. Robson is not an attorney and his notes do not contain his attorney's mental impressions, opinions, theories or analysis. *Blumenthal v. Drudge*, 186 F.R.D. 236, 241 (D.D.C. 1999); *see also Schomburg v. New York City Police Dept.*, 298 F.R.D. 138, 143 (S.D.N.Y. 2014) ("When deciding whether to order disclosure of work product, a distinction between factual work product and core work product, or the mental impressions, conclusions, opinions, or legal theories of an attorney, is often made. Factual work product is subject to disclosure once plaintiff

11

has demonstrated substantial need and undue hardship").  Defendants are unaware of any case that has analyzed notes similar to Mr. Robson's and concluded that they are protected work-product.  For example, in *In re John Doe Corp.*, 675 F.2d 482 (2d Cir. 1982), the Second Circuit addressed the question of whether notes made by an in-house attorney while interviewing employees were protected by the work product doctrine.  The Second Circuit recognized that the notes could "indicate the factual areas believed to be of importance by Doe Corp.'s legal department or contain other matters directly or indirectly reflecting their legal theories," but nevertheless ordered their production.  *Id.* at 492.

In *United States v. Marcus Schloss & Co., Inc.*, 1989 WL 62729 (S.D.N.Y. 1989), a criminal defendant sought discovery of interview notes with prosecutors and government agents kept by attorneys for a key government witness.  The court ordered the disclosure of the notes, explaining that criminal cases are different than civil cases because "the importance to the accused of exploring possible areas of impeachment rises to a level of necessity which in the absence of any countervailing factors requires disclosure." *Id.* at *4.  The court found that the defendant had demonstrated a "substantial need" because the notes might reveal "possible inconsistencies or contradictions" between the cooperator's previous statements and statements made during his cooperation with the Government, and the "credibility" of the cooperator's testimony was "crucial."   *Id.* at *3 (also noting that "'substantial need' as originally contemplated by the civil discovery rules should be defined more flexibly when applied to the interests of a criminal defendant.")

Mr. Robson's notes are potentially critical to Defendants' current motion and Defendants cannot obtain them from any other source.  Any prejudice to Mr. Robson arising out of the notes' disclosure would be minimal by comparison to the potential harm to Defendants'

fundamental rights.   After all, Mr. Robson has already pled guilty and acknowledged his

involvement in a criminal scheme.   He is obligated, pursuant to his cooperation agreement, to

answer truthfully any questions posed to him by the Government.   It is unclear what continuing

interest he could have in his assessment, from over two years ago, of the evidence of the criminal

scheme that he has already pled guilty to.   By contrast, Defendants are engaged in a hotly-

disputed contest over the Government's violation of their constitutional rights, the outcome of

which will have significant repercussions for Defendants.   For this reason, the Court should order

Mr. Robson to produce his notes to Defendants.

## II.   DEFENDANTS ARE ENTITLED TO FACTUAL INFORMATION ABOUT ANY EXPOSURE TO THEIR COMPELLED TESTIMONY OF COUNSEL FOR GOVERNMENT COOPERATOR PAUL ROBSON.

The Supreme Court has held that when an individual is unable to assert his Fifth

Amendment privilege against self-incrimination and is compelled to be a witness against

himself, the Fifth Amendment prohibits the "us[e] [of the] compelled testimony in any respect."

*Kastigar*, 406 U.S. at 453-61.   This is a blanket prohibition:  the Fifth Amendment does not only

preclude "a whole lot of use," or "excessive use," or "primary use" of compelled testimony but

rather prohibits "any use, direct or indirect."   *Poindexter*, 951 F.2d at 373 (internal citations

omitted).   In *United States v. North*, the D.C. Circuit noted that "*Kastigar* is violated whenever

the prosecution puts on a witness whose testimony is shaped, directly or indirectly, by compelled

testimony, regardless of *how or by whom* he was exposed to that compelled testimony."  920

F.2d 940, 942 (D.C. Cir. 1990) (emphasis in original).   The D.C. Circuit explained that "were the

rule otherwise, a private lawyer for a witness sympathetic to the government could listen to the

compelled testimony and use it to prepare the witness for trial," thereby allowing the government

the "advantage of use of the immunized testimony" without having to "actually cooperate in that

13

effort." *Id.*   Such a circumstance would be improper because "it does not matter to a defendant if his immunized testimony is used against him by a key witness (and his lawyer) rather than by the prosecutor" since "the damage to the defendant—which is the focus of *Kastigar*—is the same in either case. " *Id.* at 945.

In a declaration filed by the Government, Mr. Robson disclosed that he sent his counsel "certain FCA transcripts" in July 2014, prior to his July 17, 2014 proffer with the Government.  (DX608S, at ¶7.)  Defendants do not know if the "certain FCA transcripts" referenced in Mr. Robson's declaration included Defendants' compelled testimony.  If so, and if Mr. Weddle reviewed them and then used the information gleaned from that review to prepare Mr. Robson for his proffer, for subsequent interviews, or for trial, that would be an additional *Kastigar* violation.  Defendants therefore seek factual information from Mr. Weddle about whether, and when, he reviewed their compelled testimony.[2]  To the extent that this factual information is protected by the work product doctrine, Defendants believe that protection is overcome by their substantial need for this information, as described above.  It is available from no other source except Mr. Weddle and, depending on the answers, could have an substantial impact on the Court's ultimate decision regarding Defendants' constitutional rights.

---

[2]    Specifically, Defendants request that Mr. Weddle provide information, whether by way of interrogatory or testimony, with respect to: i) whether Mr. Weddle reviewed their compelled testimony; ii) when Mr. Weddle reviewed their compelled testimony; iii) whether Mr. Weddle had considered the Fifth Amendment implications of his review, prior to engaging in the review; and iv) what steps, if any, Mr. Weddle took to ensure Defendants' Fifth Amendment rights were not violated by his review of their compelled testimony.

### III.   DEFENDANTS ARE ENTITLED TO THE GOVERNMENT'S PROSECUTION MEMOS OR OTHER DOCUMENTS DESCRIBING THE BASES AND TIMING OF THE GOVERNMENT'S DECISION TO INDICT.

Once a defendant demonstrates that he has previously been compelled to testify about a matter relevant to the charges against him, the prosecution bears the "affirmative duty to prove that the evidence it proposes to use [against the defendant] is derived from a legitimate source wholly independent of the compelled testimony." *Kastigar*, 406 U.S. at 460. For example, the prosecution is required to prove that its "decision to prosecute" the defendant was not "affected" in any way, directly or indirectly, by the compelled testimony or any information derived from that testimony. *United States v. Kristel*, 762 F. Supp. 1100, 1109 (S.D.N.Y. 1991) (indictment dismissed where court found that the defendant's compelled testimony "played an important part in the Government's decision to investigate and prosecute" the defendant); *see also United States v. Mariani*, 851 F.2d 595, 600 (2d Cir. 1988) (including the Government's decision "to initiate prosecution" among potential impermissible uses of compelled testimony).

Here, Agent Weeks has testified that a "determination had been reached" concerning Defendants, prior to Mr. Robson's proffer. The timing of Defendants' indictment suggests otherwise, but Defendants are unable to cross examine Agent Weeks's testimony because the Government is withholding all contemporaneous documents relating to its decision to prosecute. This is unfair and prejudicial to Defendants. Under Rule 502(a) of the Federal Rules of Evidence, "a party that makes a selective, misleading presentation that is unfair to the adversary opens itself to a more complete and accurate presentation." Advisory Committee Notes to Rule 502; *see also Alpex Computer Corp. v. Nintendo*, No. 86 CIV. 1749 (KMW), 1994 WL 330381, at *2 (S.D.N.Y. July 11, 1994) ("The subject matter waiver doctrine is based on considerations of fairness, which 'aim to prevent prejudice to a party and distortion of the

judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information.'") (quoting *In re van Bulow*, 828 F.2d 94, 101 (2d Cir. 1987)); 12 Fed. Proc., L. Ed. § 33:296 (2013) ("a party may not disclose privileged attorney communications about a matter that is relevant and material to issues in the case and then invoke the privilege to prevent discovery of other communications about the same matter").

The Government's decision to withhold documents containing information about the timing and basis for its decision to prosecute Defendants, while simultaneously permitting testimony on that topic from Agent Weeks, has placed Defendants in the unfair position of "having to defend against a privilege holder's claim without access to pertinent privilege material that might refute the claim." *Trudeau v. New York State Consumer Protection Bd.*, 237 F.R.D. 325, 340 (N.D.N.Y. 2006) (quoting *John Doe Co. v. United States*, 350 F.3d 299, 305 (2d Cir. 2003)). As this is highly prejudicial to Defendants, the Court should order the Government to produce any materials in its possession responsive to the following request: All documents, including but not limited to, formal and informal memoranda, emails, notes, presentations, or other analyses concerning the Government's intention, or lack thereof, to prosecute Mr. Allen or Mr. Conti, including any documents setting forth the evidence in support of or against prosecution; that describe evidence yet unknown to the prosecutors; that discuss the importance of Mr. Robson's cooperation in the decision to indict Mr. Allen or Mr. Conti; that discuss the relative pros and cons of bringing a case; that discuss the potential timing of the indictment; or that otherwise contain information about the timing and the bases for the Government's decision to indict Mr. Allen or Mr. Conti. [3]

---

[3]     Defendants note that they would not need these materials if he Government is willing to stipulate to the fact that Mr. Robson's cooperation played a significant role in its decision to indict Mr. Allen and Mr. Conti. If the Government is willing make such a stipulation,

**CONCLUSION**

Accordingly, this Court should compel Mr. Robson and his counsel[4] to produce

Mr. Robson's notes and the information sought by Defendants about Mr. Weddle's exposure to

Defendants' compelled testimony.  The Court should also compel the Government to produce

documents responsive to the request found in Section III.


Dated:   New York, New York
         December 21, 2015


**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Michael S. Schachter_____

Michael S. Schachter
Casey E. Donnelly
787 Seventh Avenue
New York, New York 10019
Phone: (212) 728-8000

*Attorneys for Defendant Anthony Allen*


**TOR EKELAND, P.C.**

By: /s/ Tor Ekeland_____
(electronic signature w/permission)
Tor Ekeland
Aaron Williamson
195 Plymouth Street, 5th Floor
Brooklyn, New York 11201-1133
Phone: (718) 737-7264

*Attorneys for Defendant Anthony Conti*

---

Defendants will withdraw their request for these materials concerning the indictment
decision.

[4]     Given the control the Government exercises over Mr. Robson pursuant to his cooperation
agreement, Mr. Robson and Mr. Weddle should provide the requested notes and
information without a need for a formal subpoena.  However, to the extent Mr. Weddle,
Mr. Robson or the Government believe that a formal request is necessary, Defendants
hereby seek leave to serve a subpoena for Mr. Robson's notes, leave to serve a subpoena
for testimony on Mr. Weddle, or alternatively, for leave to serve Mr. Weddle with
interrogatories of the nature described in Section II above.

17